22-951-cv (L)
*CompassCare v. Hochul*

# United States Court of Appeals
# For the Second Circuit

August Term 2023

Argued: December 14, 2023
Decided: January 02, 2025

No. 22-951-cv (L)
No. 22-1076-cv

COMPASSCARE, A NEW YORK NONPROFIT
CORPORATION; NATIONAL INSTITUTE OF FAMILY
AND LIFE ADVOCATES, DBA NIFLA, A VIRGINIA
CORPORATION; FIRST BIBLE BAPTIST CHURCH, A NEW
YORK NONPROFIT CORPORATION,

*Plaintiffs-Appellants-Cross-Appellees,*

v.

KATHY HOCHUL, IN HER OFFICIAL CAPACITY AS THE GOVERNOR OF THE STATE OF
NEW YORK; ROBERTA REARDON, IN HER OFFICIAL CAPACITY AS THE COMMISSIONER
OF THE LABOR DEPARTMENT OF THE STATE OF NEW YORK; AND LETITIA JAMES, IN
HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF NEW YORK,

*Defendants-Appellees-Cross-Appellants.*

Appeal from the United States District Court
for the Northern District of New York
No. 1:19CV01409, Thomas J. McAvoy, *Judge.*

Before: PARKER, PÉREZ, and MERRIAM, *Circuit Judges*.

CompassCare, the National Institute of Family and Life Advocates, and First Bible Baptist Church (collectively, "Plaintiffs") challenge the constitutionality of New York Labor Law Section 203-e ("the Act"), which prohibits discrimination based on an employee's or a dependent's reproductive health decision making. The United States District Court for the Northern District of New York (McAvoy, *J.*) granted the State's motion to dismiss Plaintiffs' expressive-association, speech, free exercise, religious autonomy, and vagueness claims. The District Court also permanently enjoined enforcement of the Act's Notice Provision, which required employers issuing employee handbooks to include certain information regarding employees' rights and remedies under the Act.

Thereafter, this Court decided *Slattery v. Hochul*, which held that an employer may have an associational-rights claim if the Act "forces [the employer] to employ individuals who act or have acted against the *very mission* of its organization." 61 F.4th 278, 288 (2d Cir. 2023) (emphasis added). In light of that decision, we vacate the dismissal of Plaintiffs' expressive-association claim, the grant of summary-judgment to Plaintiffs as to the Act's Notice Provision, and the permanent injunction. We remand for the District Court to determine whether any Plaintiff has plausibly alleged an associational-rights claim under *Slattery*. We affirm the dismissal of Plaintiffs' free speech and free exercise claims.

> JONATHAN CALEB DALTON, Alliance Defending Freedom, Lansdowne, VA (Kevin H. Theriot, Jacob P. Warner, John J. Bursch, Alliance Defending Freedom, Scottsdale, AZ; John J. Bursch, Alliance Defending Freedom, Washington D.C.; James P. Trainor, Trainor Law, PLLC, Malta, N.Y., *on the briefs*) *for Plaintiffs-Appellants-Cross-Appellees*.
>
> LAURA ETLINGER (Barbara D. Underwood, Galen Leigh Sherwin, Andrea Oser, *on the briefs*) *for* Letitia James, Attorney General of

the State of New York, Albany, N.Y., *for Defendants-Appellees-Cross-Appellants.*

SARAH A. L. MERRIAM, *Circuit Judge*:

CompassCare, the National Institute of Family and Life Advocates ("NIFLA"), and First Bible Baptist Church ("First Bible") (collectively, "Plaintiffs") challenge the constitutionality of New York Labor Law Section 203-e ("the Act"), which prohibits "discrimination based on an employee's or a dependent's reproductive health decision making." Plaintiffs contend that the Act unconstitutionally infringes their First Amendment freedoms of expressive association, speech, and religion. They also argue that the Act compels speech in violation of the First Amendment by requiring them to notify employees, in their employee handbooks (should they choose to issue such handbooks), of the employees' "rights and remedies" under the Act. N.Y. Lab. Law §203-e(6) (the "Notice Provision").

The United States District Court for the Northern District of New York (McAvoy, *J.*)  granted the State's motion to dismiss Plaintiffs' expressive-association, speech, free exercise, religious autonomy, and vagueness claims. The District Court also enjoined enforcement of the Act's Notice Provision, which required employers issuing employee handbooks to include certain information

3

regarding employees' rights and remedies under the Act.

Thereafter, this Court decided *Slattery v. Hochul*, which held that an employer may have an associational-rights claim if the Act "forces [the employer] to employ individuals who act or have acted against the *very mission* of its organization." 61 F.4th 278, 288 (2d Cir. 2023) (emphasis added). The District Court did not have the benefit of the *Slattery* opinion – which is now binding precedent – when it issued the orders challenged in this matter. In light of *Slattery*, we vacate the dismissal of Plaintiffs' expressive-association claim, the grant of summary-judgment to Plaintiffs as to the Act's Notice Provision, and the permanent injunction. We remand for the District Court to determine whether any Plaintiff has plausibly alleged an expressive-association claim under *Slattery*. We affirm the dismissal of Plaintiffs' free speech and free exercise claims.

## I. Background

### A. The Act

The Act prohibits "discrimination based on an employee's or a dependent's reproductive health decision making." N.Y. Lab. Law §203-e. Specifically, the Act prohibits an employer from "accessing an employee's personal information regarding the employee's . . . reproductive health decision

4

making, including but not limited to, the decision to use or access a particular drug, device or medical service." *Id*. §203-e(1) (the "Information Provision"). The Act also prohibits employers from discriminating or retaliating "with respect to compensation, terms, conditions, or privileges of employment," *id.* §203-e(2)(a) (the "Discrimination Provision");[1] and from requiring an employee to waive these rights, *see id*. §203-e(2)(b) (the "Waiver Provision"). The Notice Provision requires an employer who chooses to issue an employee handbook to "include in the handbook notice of employee rights and remedies under this section." *Id*. §203-e(6). Finally, the Act provides employees with a civil cause of action to redress violations of these protections. *See id*. §203-e(3).

## B.  The Plaintiffs

CompassCare, NIFLA, and First Bible contend that the Act unconstitutionally "meddle[s] in the affairs of religious and pro-life organizations . . . by forcing them to employ and associate with those persons who do not share or live by the organizations' beliefs regarding abortion,

---

[1] The Act makes no reference to hiring decisions, and the State contends that it is "unclear" whether the Act prohibits discrimination in hiring on the basis of an applicant's reproductive health decisions or history. State's Br. at 31 n.6. This question does not affect our analysis because the Complaint asserts claims pertaining to both "prospective and current employees." Joint App'x at 21 (Compl. ¶27).

5

contraception, and the impropriety of sexual relations outside the context of a marriage between a man and a woman." Joint App'x at 18 (Compl. ¶3).[2]

### 1. CompassCare

CompassCare describes itself as "a pregnancy care center" that "provides clinical pregnancy testing to confirm the existence of pregnancy; ultrasound exams; gestational age determinations; complete pregnancy, abortion, and adoption options consultations; STD testing and treatment; abortion pill reversal services; and medical, insurance, and community support referrals." *Id*. at 25 (Compl. ¶¶55, 58). CompassCare, according to the Complaint, "does not recommend, provide, or refer for abortions or abortifacient drugs or devices, holding it immoral for anyone to participate in these services." *Id.* at 26 (Compl. ¶69). "In addition to functioning as a standalone pregnancy care center . . . CompassCare provides training and tools to other" centers, *id.* at 29 (Compl. ¶95), and makes public statements concerning "laws and cultural developments dealing with life, pregnancy, abortion, contraception, and other issues," *id.* at 30 (Compl. ¶96).

The Complaint describes CompassCare as "a Christ-centered agency" and

---

[2] We recite in this section the allegations of the Complaint, accepting them as true at the motion-to-dismiss stage. *See Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023).

"a religious organization that provides its services . . . pursuant to its pro-life and religious viewpoint." *Id.* at 27 (Compl. ¶¶77, 80). CompassCare's "Christian faith and religious beliefs motivate and permeate its mission and all of its activities." *Id.* (Compl. ¶75). CompassCare opposes both abortion and "the popular societal acceptance of a birth control mentality," which it believes "violates the purpose of sexuality as revealed in the Bible." *Id.* at 26 (Compl. ¶71).

In order to fulfill its espoused mission, CompassCare requires that all staff members "know Jesus Christ as their Lord and Savior . . . support CompassCare's religious mission, . . . personally conduct themselves consistent[ly] with the Christian faith," and "believe in and agree to abide by its positional statements on abortion, birth control, religious faith, and organizational principles." *Id.* at 28 (Compl. ¶¶81-83). CompassCare states that it "requires such assent because it believes that by associating with like-minded individuals, it will be able to spread an authentic message of love and hope that will be received more readily by patients, which will ultimately save more lives and reduce the perceived need for abortion." *Id.* at 29 (Compl. ¶93).

### 2. NIFLA

According to the Complaint, NIFLA is an organization "comprised of

7

member pregnancy care centers from across the nation." *Id.* at 23 (Compl. ¶43).

"Many of NIFLA's New York member centers are religious organizations that

pursue their pro-life mission and spread their pro-life message as an exercise of

their religious beliefs." *Id.* at 30 (Compl. ¶103). "NIFLA provides both medical

and non-medical pro-life pregnancy centers with legal resources and counsel,

with the aim of developing a network of life-affirming ministries in every

community across the nation in order to achieve an abortion-free America." *Id.*

(Compl. ¶99). "NIFLA also sponsors and holds various conferences aimed at

educating individuals and organizations as to best practices regarding the

provision of pro-life services and advocacy." *Id.* (Compl. ¶100).

"NIFLA emphasizes the importance of statements of faith and codes of

conduct to its member centers and strongly encourages that its centers

implement such documents in their daily operations." *Id.* (Compl. ¶104). "Many

of NIFLA's New York member centers require their employees and all who serve

them in any capacity to assent to and personally live by, among other things,

their organizational codes of conduct, positional statements, and/or statements of

faith regarding pregnancy, abortion, contraceptive use, and sexual conduct

outside the context of a marriage between one man and one woman." *Id.* at 31

8

(Compl. ¶106).

### 3. First Bible

The Complaint describes First Bible as a Baptist church that operates an outreach center, a foster care ministry, a private day school, and a recreational sports center. *See generally id.* at 31-35 (Compl. ¶¶114-140). "First Bible believes and teaches that human life begins at conception . . . [and] that abortion constitutes the unjustified, unexcused taking of unborn human life, which violates the Bible's command against the intentional destruction of innocent human life." *Id.* at 32 (Compl. ¶121). "First Bible expects its pastors, directors, employees, and volunteers – in other words all who minister or assist in any capacity – to abide by and agree with the church's moral and ethical standards . . . in both their work life and private life." *Id.* at 33 (Compl. ¶130). First Bible states that it "will not hire or retain any . . . employee . . . who refuses to assent to its statement of faith, or refuses to live out that statement of faith in his or her personal life." *Id.* (Compl. ¶131).

## C. Procedural History

Plaintiffs filed suit on November 14, 2019, against various New York officials in their official capacities ("the State"), seeking declaratory and

injunctive relief to prevent enforcement of the Act. Plaintiffs contend that the Act violates their First Amendment rights of expressive association, free speech, free exercise of religion, and "religious autonomy," and that the Act is unconstitutionally vague. *Id.* at 61. Plaintiffs also allege that the Notice Provision compels speech in violation of the First Amendment.

On June 5, 2020, the District Court granted the State's motion to dismiss Plaintiffs' expressive association, speech, free exercise, religious autonomy, and vagueness claims, and denied Plaintiffs' motion for a preliminary injunction enjoining enforcement of the core provisions of the Act.[3] *See CompassCare v. Cuomo* ("*CompassCare I*"), 465 F. Supp. 3d 122, 167-68 (N.D.N.Y. 2020). The District Court denied the State's motion to dismiss Plaintiffs' claims related to the Notice Provision – leaving it as the sole claim to proceed to summary judgment – and entered a preliminary injunction barring enforcement of that provision. *See id.* Following discovery, the parties cross-moved for summary judgment with respect to the Notice Provision. The District Court granted Plaintiffs' motion for summary judgment, declaring the Notice Provision unconstitutional and entering a permanent injunction barring its enforcement. *See CompassCare v.*

---

[3] Plaintiffs do not challenge the dismissal of their religious autonomy and vagueness claims in this appeal.

*Cuomo* ("*CompassCare II*"), 594 F. Supp. 3d 515, 529-30 (N.D.N.Y. 2022).

The parties appealed, and the appeal was held in abeyance pending this Court's decision in *Slattery*, 61 F.4th 278. In *Slattery*, Evergreen Association, Inc. ("Evergreen"), a crisis pregnancy center, challenged the Act on the grounds that the Act violates its freedoms of expressive association, speech, and religion, and that it is void for vagueness. *See id.* at 284. This Court affirmed the dismissal of Evergreen's speech, exercise, and vagueness claims but reversed the dismissal of its expressive association claim, and remanded for further proceedings. *See id.* at 295. That matter is pending in the Northern District of New York.

## II. <u>**Standard of Review**</u>

"Our standard of review for both motions to dismiss and motions for summary judgment is *de novo*." *Guippone v. BH S & B Holdings LLC*, 737 F.3d 221, 225 (2d Cir. 2013) (citation and quotation marks omitted). In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we accept the factual allegations of the Complaint, "and the reasonable inferences that can be drawn therefrom, as true. . . . To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014) (citation and

11

quotation marks omitted). "Summary judgment is proper only if the record, viewed in the light most favorable to the nonmoving party, reveals no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *NML Cap. v. Republic of Arg.*, 621 F.3d 230, 236 (2d Cir. 2010).

We review the grant of a permanent injunction for abuse of discretion. *See Almontaser v. N.Y.C. Dep't of Educ.*, 519 F.3d 505, 508 (2d Cir. 2008) (per curiam); *see also Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 62 (2d Cir. 2016). "A district court abuses its discretion when it rests its decision on a clearly erroneous finding of fact or makes an error of law." *Almontaser*, 519 F.3d at 508.

## III.   **Expressive Association**

Plaintiffs assert that the Act violates their freedom of expressive association by prohibiting them from terminating or refusing to hire a person who has made a reproductive health decision, such as having used contraception or had an abortion, that conflicts with Plaintiffs' beliefs. The District Court dismissed this claim, holding that the Act's burdens on Plaintiffs' expressive activity are "incidental." *CompassCare I*, 465 F. Supp. 3d at 149.

12

The Supreme Court has made clear that the right to engage in activities protected by the First Amendment includes an implicit "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). This implied freedom of association "plainly presupposes a freedom not to associate." *Id.* at 623. The Supreme Court has held that this "freedom not to associate" permits a voluntary association, in some circumstances, to exclude or expel a member it does not desire, even when doing so runs afoul of a law prohibiting discrimination based on a protected characteristic. *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648, 653 (2000).

In *Dale*, the Court held that a New Jersey law prohibiting discrimination in public accommodations on the basis of sexual orientation did not preclude the Boy Scouts from expelling a gay scoutmaster. *See id.* at 661. The Court set forth a three-part test to determine whether an anti-discrimination law violates a group's freedom of expressive association. First, a court must determine "whether the group engages in 'expressive association,'" *id.* at 648, giving "deference to an association's assertions regarding the nature of its expression," *id.* at 653. Second, the court asks whether the presence of a certain member

13

"would significantly burden" the group's expression, again giving "deference to an association's view of what would impair its expression." *Id.* Importantly, the Court cautioned that this deference does not mean that "an expressive association can erect a shield against antidiscrimination laws simply by asserting that mere acceptance of a member from a particular group would impair its message." *Id.* Instead, the Court, focusing on the scoutmaster's work as an activist and leader in the gay community, concluded that compliance with the New Jersey law would "force the organization to send a message, both to the youth members and the world, that the Boy Scouts accepts homosexual conduct as a legitimate form of behavior." *Id.* Third, if the group's expression is burdened, the court applies strict scrutiny to "inquire whether the application of" the regulation "runs afoul of [the group's] freedom of expressive association." *Id.* at 656.

The Supreme Court has never explicitly addressed whether, and to what extent, an *employer* has a right of expressive association with respect to its paid employees. Rather, the Supreme Court's expressive-association decisions to date have considered the relationships among members of voluntary associations. *See Dale*, 530 U.S. at 649-50; *Jaycees*, 468 U.S. at 612-13 (civic association); *N.Y. State*

14

*Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 8-9 (1988) (certain private clubs);

*Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 539-40 (1987)

(association of professionals).[4]

In this appeal, the State argues *for the first time* that "the right of expressive

association does not extend to the employment context." State's Br. at 31

(capitalization altered). This Court has not previously been called upon to

decide, expressly, the scope of an employer's right to expressive association. For

example, in *New Hope Family Services v. Poole*, 966 F.3d 145 (2d Cir. 2020), the

parties did not contest – and thus we implicitly assumed without deciding – that

employers enjoy at least some right to expressive association. *See id.* at 178-80.

Likewise, in *Slattery*, this Court applied *Dale* to hold that an anti-abortion

pregnancy center plausibly stated a claim that the Act violates its freedom of

---

[4] The Supreme Court has never held that freedom of association protects the decision of an employer to take adverse action against an employee in violation of an anti-discrimination law. On the contrary, when a female attorney sued her law firm for gender discrimination under Title VII because it refused to consider her for partnership, the Court rejected the firm's argument that "application of Title VII in this case would infringe constitutional rights of expression or association." *Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984). The Court held that the firm had not shown that its "distinctive contribution to the ideas and beliefs of our society . . . would be inhibited by a requirement that it consider petitioner for partnership on her merits." *Id.* (citation and quotation marks omitted); *see also Wisconsin v. Mitchell*, 508 U.S. 476, 487 (1993) ("In *Hishon*, we rejected the argument that Title VII infringed employers' First Amendment rights.").

15

expressive association by compelling it to hire or retain employees who have had abortions. *See* 61 F.4th at 286-91. *Slattery* cited *New Hope* for the proposition that "compelled hiring, like compelled membership, may be a way in which a government mandate can affect in a significant way a group's ability to advocate public or private viewpoints." *Id.* at 288 (alterations adopted) (quoting *New Hope*, 966 F.3d at 179). *Slattery* concluded that Evergreen had "plausibly alleged that §203-e imposes severe burdens on Evergreen's right to freedom of expressive association," because it alleged that "[t]he statute forces Evergreen to employ individuals who act or have acted against the very mission of its organization." *Id.* The Court concluded: "The right to expressive association allows Evergreen to determine that its message will be effectively conveyed only by employees who sincerely share its views." *Id.* At the motion-to-dismiss stage, the Court found that the State had not shown "that §203-e is the least restrictive means to achieve a compelling objective." *Id.* at 289.

As was the case in *New Hope*, the parties in *Slattery* appealed following a ruling on a motion to dismiss, and did not explore or litigate, either before the trial courts or on appeal, the scope of an employer's freedom of expressive association, including whether it may differ from the freedom held by voluntary

16

membership organizations.[5] *See* Opening Brief of Appellants at 24-33, *Slattery v. Hochul*, 61 F.4th 278 (2d Cir. 2023) (No. 21-911), 2021 WL 2456513, at *24-33; Brief for Appellees at 16-30, *Slattery v. Hochul*, 61 F.4th 278 (2d Cir. 2023) (No. 21-911), 2021 WL 3721795, at *16-30. Nor did the decision explicitly address that question. *See Slattery*, 61 F.4th at 286-91. The State therefore contends that *Slattery* does not prevent a finding that "the right of expressive association does not extend to the employment context," State's Br. at 31 (capitalization altered), because *Slattery* simply "assumed *sub silentio* a resolution of [an] issue" that "was never 'briefed, argued, or decided,'" and thus *Slattery*'s assumption that an employer has First Amendment associational rights is not binding precedent. State's Br. at 27 (quoting *Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 113 (2d Cir. 1988)).

In *Slattery*, the State did not argue, as it does here, that employers do not have the same expressive-association rights as voluntary membership organizations – and, consequently, the *Slattery* Court never separately examined

---

[5] On remand in *Slattery*, the State argues in support of its motion for summary judgment that the freedom of expressive association does not apply to employer-employee relationships. *See* Memorandum of Law in Support of Defendants' Motion for Summary Judgment at 13-18, *Slattery v. Hochul*, No. 1:20CV00112(AMN) (N.D.N.Y. Apr. 26, 2024), ECF No. 54-9. That motion remains pending.

that question. But *Slattery* held that "Evergreen plausibly alleged that §203-e imposes severe burdens on *Evergreen's right to freedom of expressive association*." 61 F.4th at 288 (emphasis added). It further held: "The right to expressive association allows Evergreen to determine that its message will be effectively conveyed only by employees who sincerely share its views." *Id.* That is a "portion[] of the opinion necessary to [the] result." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996). Given this precedent, we cannot, as the State urges, hold that employers have *no* freedom of expressive association with respect to their relationships with paid employees.[6] However, we also do not hold here, as Plaintiffs urge, that employers enjoy precisely the same expressive-association rights as do voluntary membership organizations.

The *scope* of freedom of expressive association in the employment context is now at issue in this case and must be considered in light of *Slattery*.

There are meaningful differences between relationships among members of voluntary organizations and relationships between employers and employees.

---

[6] To be clear, where an issue was neither argued by the parties nor expressly discussed by the Court, the field may well be open for consideration of that issue in the first instance. But in this case, we are mindful that the Supreme Court and our own decisions instruct that binding precedent includes "not only the result but also those portions of the opinion necessary to that result." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996).

Employment relationships are contractual, with work exchanged for pay, and the employment contract provides mutual guarantees to the parties. Employees rely on their jobs for their livelihoods, and termination of or refusal to hire an employee can have significantly greater impact than exclusion from a voluntary association. Furthermore, significant power imbalances often exist between employers and employees which may not be present in voluntary associations. And particularly in the employment context, we must ensure that the right to expressive association does not serve as a shield for unlawful discrimination. The Supreme Court has cautioned that "[i]nvidious private discrimination may be characterized as a form of exercising freedom of association protected by the First Amendment," but such discrimination "has never been accorded affirmative constitutional protections." *Norwood v. Harrison*, 413 U.S. 455, 470 (1973).

Significantly, employment conditions and relationships are heavily regulated and closely scrutinized at both the state and federal levels, and have been so for many years. "In dealing with the relation of employer and employed, the Legislature has necessarily a wide field of discretion in order that there may be suitable protection of health and safety, and that peace and good order may

be promoted through regulations designed to insure wholesome conditions of work and freedom from oppression." *W. Coast Hotel Co. v. Parrish*, 300 U.S. 379, 393 (1937); *see also Lincoln Fed. Lab. Union No. 19129, A.F. of L. v. Nw. Iron & Metal Co.*, 335 U.S. 525, 536 (1949) ("[S]tates have power to legislate against what are found to be injurious practices in their internal commercial and business affairs, so long as their laws do not run afoul of some specific federal constitutional prohibition, or of some valid federal law."). And because employment, like education and housing, is central to the well-being of the nation and its citizens, it is the subject of numerous federal and state anti-discrimination laws. *See, e.g.*, 42 U.S.C. §2000e *et seq.* (Title VII of the Civil Rights Act of 1964); 42 U.S.C. §12101 *et seq.* (Americans with Disabilities Act); 29 U.S.C. §621 *et seq.* (Age Discrimination in Employment Act); N.Y. Exec. Law §290 *et seq.* (New York State Human Rights Law).

In light of these significant differences between voluntary associations and employment relationships, and the long and complex history of regulation of employment relationships, the Supreme Court's decisions regarding the freedom of expressive association enjoyed by voluntary associations do not apply neatly to employers. For example, in *Dale*, the Supreme Court emphasized that an

association need not be formed for the "'purpose' of disseminating a certain message in order to be entitled to the protections of the First Amendment," and that "the First Amendment protects the Boy Scouts' method of expression." *Dale*, 530 U.S. at 655. If this approach were to be applied fully and broadly to employers, it could permit *any* employer to claim that it expresses its beliefs through its business activities, and that the retention of certain employees burdens that expression. As *amici* note, such a result could destabilize the protections that state and federal governments have established to protect employees from exclusions based on protected characteristics.[7]

We do not go so far as to hold, as the State urges, that no employer may challenge the applicability of a law that the employer contends burdens its freedom of expressive association. As *Slattery* makes clear, an entity like CompassCare, or another mission-based organization that advocates for a particular cause or set of beliefs, could plausibly allege that the compelled

---

[7] Notably, permitting an employer to take adverse actions against employees on the basis of their current or historical reproductive health decisions is likely to impact female employees much more than it impacts male employees – which could create a conflict with the protections of Title VII. "Title VII prohibits both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as 'disparate impact')." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009).

21

retention of a specific employee would impair its ability to express its message. But just as a voluntary association cannot "erect a shield against antidiscrimination laws simply by asserting that mere acceptance of a member from a particular group would impair its message," nor can an employer. *Dale*, 530 U.S. at 653. The applicable case law instructs that a plausible claim in this area requires more.

To sustain their challenge to the Act, each Plaintiff must adequately allege (and eventually prove) that the Act threatens "the very mission of its organization." *Slattery*, 61 F.4th at 288. It is not enough for an employer to claim that it holds particular views or interests, or even that it expresses such views through its work. In the workplace, expressive association rights are not unlimited; the right to expressive association does not permit an employer *generally* to discriminate in its employment practices – potentially violating the statutory or constitutional rights of employees and applicants. "There is no constitutional right, for example, to discriminate in the selection of who may attend a private school or join a labor union." *Hishon*, 467 U.S. at 78. Rather, the right to expressive association is implicated only when the employment decision

22

at issue "goes to the structure and identity of the association as an association."

*Slattery*, 61 F.4th at 290 (citation and quotation marks omitted).

For an employer to make the showing required by *Slattery*, it must show that the Act threatens its very mission not only in a vague and generalized sense, but in the context of a specific employment decision. *See Dale*, 530 U.S. at 653. This would presumably require assessment of (1) the responsibilities of the position at issue, including whether it is client-facing and whether it involves expressly or implicitly speaking for the organization, and (2) the particular conduct or attribute of the employee that renders the employment of that person, in that position, a threat to the employer's mission.[8] In short, an employer must plausibly allege that the Act's impact on the specific employment decision "will impede the organization's ability to engage in . . . protected activities or to disseminate its preferred views." *Jaycees*, 468 U.S. at 627.

---

[8] Plaintiffs' allegations relate to the potential impact of the *current* conduct of *current* employees, rather than any historical actions. *See* Joint App'x at 43, 46 (Compl. ¶¶197-98, 222). The same was true in *Dale* – the scoutmaster's *current* activism, the Boy Scouts contended, interfered with their mission. *See Dale*, 530 U.S. at 653. It does not appear that any Plaintiff contends, for example, that the non-public fact that an employee had an abortion or used a contraceptive years before his or her employment would impact that Plaintiff's mission sufficiently to infringe its constitutional rights.

23

The District Court concluded that the allegations before it triggered only rational basis review of the Act. The court reasoned that while the Act "imposes some incidental limitations on the Plaintiffs' associational rights," those limitations do not result in a restriction on Plaintiffs' ability to advocate for their beliefs, "much less a severe one." *CompassCare I*, 465 F. Supp. 3d at 149. Similarly, in *Slattery*, the District Court found that the Act's "burden on Evergreen's expressive association rights was incidental rather than severe." *Slattery*, 61 F.4th at 287. On appeal, that holding was reversed: "After weighing all reasonable inferences in Evergreen's favor, we conclude[d] that Evergreen plausibly alleged that §203-e imposes severe burdens on Evergreen's right to freedom of expressive association." *Id.* at 288. Because the allegations made by Plaintiffs here differ from those made by the plaintiffs in *Slattery*, it may be that this case is decided differently as to one or all Plaintiffs. But remand is necessary to permit the District Court to evaluate the expressive-association claims of CompassCare, NIFLA, and First Bible, in light of *Slattery*.

On remand, each Plaintiff will have to demonstrate that it meets the relevant standard separately and independently of the others – the outcome may therefore vary for different Plaintiffs. The District Court shall evaluate, on

remand, whether each Plaintiff has separately plausibly alleged that §203-e

burdens its distinct associational rights by forcing it to "employ individuals who

act or have acted against" its *very mission*," *Slattery*, 61 F.4th at 288 (emphasis

added), and whether it has plausibly alleged that the statute burdens its

associational rights with respect to specific employment decisions.[9]

We therefore vacate the dismissal of Plaintiffs' expressive-association claim

and remand for further consideration by the District Court.[10]

## IV.    **<u>The Notice Provision</u>**

The State cross-appeals the District Court's grant of summary judgment to

Plaintiffs as to the Notice Provision, which requires employers that choose to

provide an employee handbook to "include in the handbook notice of employee

rights and remedies under this section." N.Y. Lab. Law §203-e(6).[11] The District

Court also entered a permanent injunction barring enforcement of the Notice

---

[9] For example, we note that First Bible does not allege that anti-abortion advocacy is central to its mission. *See* Joint App'x at 32 (Compl. ¶¶117-18); Plaintiffs' Reply Br. at 22-23.

[10] Plaintiffs are free to renew their previously denied motion for preliminary injunction on remand. We offer no view on whether such a motion should be granted under the standards described here and in *Slattery*.

[11] The District Court simultaneously denied the State's motion for summary judgment on this claim.

Provision "against any employer," *CompassCare II*, 594 F. Supp. 3d at 530, which the State also appeals.

The District Court concluded that the Notice Provision compels speech. It found that CompassCare and NIFLA[12] use handbooks to explain to their employees "the rules that govern conduct in the workplace, the values of the organizations, and the religious perspective that guides the organizations' operations." *CompassCare II*, 594 F. Supp. 3d at 527. Relying on *National Institute of Family & Life Advocates v. Becerra*, 585 U.S. 755 (2018) ("*Becerra*"), the District Court held that the Notice Provision was subject to strict scrutiny because "[r]equiring that Plaintiffs also include in those handbooks a statement that the law protects employees who engage in behavior contrary to that promoted by the Plaintiffs would compel them to promote a message about conduct contrary to their religious perspective." *Id.* Applying strict scrutiny, the District Court concluded that the Notice Provision was not sufficiently narrowly tailored, because the State could have served the "compelling purpose of informing workers of their rights" through less restrictive means, such as producing posters

---

[12] CompassCare uses an employee handbook, while NIFLA produces a model handbook for its members. *See* Joint App'x at 28, 30 (Compl. ¶¶84, 105). First Bible alleged that at the time the Complaint was filed, it was "in the process of creating an employee handbook." *Id.* at 45 (Compl. ¶215).

for display in the workplace or implementing an advertising campaign. *See id.* at 529.

The State argues that the Notice Provision is "analogous to laws compelling the disclosure of commercial speech," and is thus subject to (and survives) rational basis review. State's Br. at 50. Plaintiffs argue, *inter alia*, that the Notice Provision is subject to and fails strict scrutiny because "no matter whether [the Notice Provision's] requirement conveys commercial information, it compels Plaintiffs to speak against their beliefs." Plaintiff's Reply Br. at 31.[13] Nonetheless, Plaintiffs concede that the permanent injunction is overly broad and should be "tailor[ed] . . . to protect Plaintiffs in this as-applied challenge." *Id.* at 35.

For the reasons stated below, we vacate the grant of summary judgment in favor of Plaintiffs as well as the permanent injunction.

---

[13] Plaintiffs' primary argument in support of the application of strict scrutiny is that the Notice Provision compels them to make a *false* statement that the Act prohibits discrimination on the basis of reproductive health decision making, and that the Notice Provision amounts to viewpoint discrimination because it "forces Plaintiffs to express the *government's* view about how the Act applies to them." Plaintiffs' Reply Br. at 30-34. But this puts the cart before the horse, by (1) assuming the Act will be found unconstitutional as applied to Plaintiffs, and (2) assuming that such a finding would render the Notice Provision *also* unconstitutional as applied to Plaintiffs – even if accompanied by an appropriate notice indicating that it does not apply to Plaintiffs. The Act remains good law, and Plaintiffs' disagreement with it does not alter that reality.

## A.     Applicable Law

We begin with the applicable level of scrutiny to be applied to a law that arguably compels speech. "The right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). Which level of scrutiny applies to a particular compelled statement depends on the type of speech at issue. *See Riley v. Nat'l Fed'n for the Blind of N.C., Inc.*, 487 U.S. 781, 787 (1988).

"Our lodestars in deciding what level of scrutiny to apply to a compelled statement must be the nature of the speech taken as a whole and the effect of the compelled statement thereon." *Id.* at 796. Some laws compelling speech are subject to strict scrutiny. "Government action that stifles speech on account of its message, or that requires the utterance of a particular message favored by the Government, contravenes" the right of each person to "decide for himself or herself the ideas and beliefs deserving of expression," and is subject to "the most exacting scrutiny." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 641-42 (1994). Even a law that mandates the disclosure of factual information may be subject to strict scrutiny if the mandated disclosure is "inextricably intertwined with

28

otherwise fully protected speech," such as "informative and . . . persuasive

speech." *Riley*, 487 U.S. at 796 (citation and quotation marks omitted). A law

compelling speech can withstand strict scrutiny only if "the challenged

regulation . . . [is] narrowly tailored to promote a compelling Government

interest" and "use[s] the least restrictive means to achieve its ends." *Evergreen*

*Ass'n, Inc. v. City of New York*, 740 F.3d 233, 246 (2d Cir. 2014) (citation and

quotation marks omitted).

But not all laws compelling speech are subject to strict scrutiny.[14] The

Supreme Court has subjected mandatory disclosures in advertising – a form of

"commercial speech" entitled to lesser First Amendment protection – to a level of

scrutiny resembling rational basis review. *See Zauderer v. Off. of Disciplinary*

*Couns. of Supreme Ct. of Ohio*, 471 U.S. 626, 651 (1985). Advertising regulations are

not subject to strict scrutiny because they do not "prescribe what shall be

orthodox in politics, nationalism, religion, or other matters of opinion or force

---

[14] Indeed, we have previously held that "a conduct-regulating statute of general application that imposes an incidental burden on the exercise of free speech rights does not implicate the First Amendment." *Church of American Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 209 (2d Cir. 2004). The State does not argue that is true here; thus, for the purposes of this opinion, we assume that the Notice Provision does at least implicate Plaintiffs' First Amendment rights.

citizens to confess by word or act their faith therein." *Id.* (quoting *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943)). Rather, "an advertiser's rights are adequately protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers," and the requirement is not "unjustified or unduly burdensome." *Id.*

The Supreme Court has never defined "the precise bounds of the category of expression that may be termed commercial speech," *id.* at 637, but has held that it includes "expression related solely to the economic interests of the speaker and its audience." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980); *see also Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 114-15 (2d Cir. 2001) (applying the *Zauderer* standard to state-mandated mercury warning labels on light bulbs); *N.Y. State Rest. Ass'n v. N.Y.C. Bd. of Health*, 556 F.3d 114, 132 (2d Cir. 2009) (applying the same standard to calorie information on restaurant menus).

In *Becerra*, the Court left open the possibility that conversations between staff of an anti-abortion crisis pregnancy center and a prospective client could amount to commercial speech, if the disclosures required by the statute had been "limited to 'purely factual and uncontroversial information about the terms

30

under which . . . services will be available.'" 585 U.S. at 768 (quoting *Zauderer*, 471 U.S. at 651). But in that case, the California statute being challenged "require[d] these clinics to disclose information about *state*-sponsored services – including abortion, anything but an 'uncontroversial' topic." *Id.* at 769.[15] Indeed, that statute required anti-abortion clinics to inform their clients of the availability of abortions at State-sponsored facilities. *See id.* at 763-64. As a result, the Court found, *Zauderer* did not apply.

## B. The Notice Provision's Requirements

Applying these principles, we conclude that while the Notice Provision is a content-based regulation of speech, it is subject to the rational basis review standard articulated in *Zauderer*. The required disclosure of the existence and basic nature of an otherwise-valid statute is similar to the mandated commercial disclosures at issue there, and a far cry from the sort of mandated "confess[ion]" of "what shall be orthodox in politics, nationalism, religion, or other matters of opinion" at issue in other cases. *Barnette*, 319 U.S. at 642. The Notice Provision

---

[15] The Court in *Becerra* also rejected the Ninth Circuit's characterization of the speech of crisis pregnancy centers as "professional speech" – an argument not raised here. *Becerra*, 585 U.S. at 767. The Court did not ultimately identify what level of scrutiny applied to the California notice requirement, but it held that the notice requirement failed even under the intermediate-scrutiny standard that the Ninth Circuit had applied. *See id.* at 773-75.

31

mandates disclosure only of "purely factual and uncontroversial information about the terms under which . . . services will be available," *Zauderer*, 471 U.S. at 651, specifically, the terms of employment under New York law. As such, the Notice Provision is similar to many other state and federal laws requiring workplace disclosures – in employee handbooks or through other means, and by all employers or certain categories of employers – of health, safety, and civil rights information. These notification requirements are so numerous that the New York State and federal Departments of Labor have compiled lists of them for employers' reference. *See Workplace Posters*, U.S. Dep't of Lab., https://www.dol.gov/general/topics/posters [https://perma.cc/BJY7-F5LN] (last visited Aug. 30, 2024); *Posting Requirements*, N.Y. Dep't of Lab., https://dol.ny.gov/posting-requirements-0 [https://perma.cc/4W6G-YDCH] (last visited Aug. 30, 2024). Indeed, such notice requirements are part of "a longstanding tradition in this country" supported by a "historical warrant." *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 795, 792 (2011).

Of course, the policy judgment that motivated the Act may be "controversial" in the same way that the policy judgments underlying Title VII, or minimum wage laws, are controversial. But the existence and contents of the

Act – and an employer's obligation to comply with it – is not itself controversial. As *Slattery* pointed out, "one must distinguish for First Amendment purposes between requiring – for example – the National Organization for the Reform of Marijuana Laws to comply with laws prohibiting the distribution of controlled substances, on the one hand, and requiring that same organization to admit anti-drug crusaders to its membership, on the other." 61 F.4th at 290 (citation and quotation marks omitted).

Furthermore, we have considered the nature of the speech taken as a whole and the effect of the compelled statement, and we conclude that the speech compelled by the Notice Provision is not "inextricably intertwined with otherwise fully protected speech" such that strict scrutiny would apply. *Riley*, 487 U.S. at 796. The handbooks at issue here contain statements of the organizations' missions and values, which are themselves "fully protected." *Id*. The handbooks also contain a wide variety of information about the terms and conditions of employment, such as medical leave, payroll, and information technology policies. The handbooks even include provisions designed to comply with other disclosures mandated by law. *See* Joint App'x at 200, 230-31 (notices of sexual harassment prevention policy, in compliance with N.Y. Lab. Law §201-g);

33

*id.* at 213-17, 237-40 (notices of fringe benefits and hours, in compliance with N.Y. Lab. Law §195).[16]

Requiring Plaintiffs to include among these wide-ranging provisions a notice informing employees of their available rights and remedies under a valid statute is not akin to requiring a crisis pregnancy center to distribute a notice about state-sponsored reproductive health services "at the same time [the centers] try to dissuade women from choosing that option." *Becerra*, 585 U.S. at 766.[17]

We conclude that the required notification does not interfere with Plaintiffs' greater message and mission. The Notice Provision does not require alterations of other portions of the handbook, nor does it require any statement

---

[16] Indeed, other courts that have considered free-speech challenges to mandated disclosures of employees' statutory rights have rejected them handily. *See Lake Butler Apparel Co. v. Sec'y of Lab.*, 519 F.2d 84, 89 (5th Cir. 1975) (holding that "if the government has a right to promulgate" regulations under the Occupational Health and Safety Act, "it seems obvious that they have a right to statutorily require that they be posted in a place that would be obvious to the intended beneficiaries of the statue" – that is, the employees); *UAW-Lab. Emp. & Training Corp. v. Chao*, 325 F.3d 360, 365 (D.C. Cir. 2003) (observing that "an employer's right to silence is sharply constrained in the labor context, and leaves it subject to a variety of burdens to post notices of rights and risks").

[17] Nor is such a requirement akin to the mandated disclosure at issue in *Riley*, under which a person soliciting funds for a charity was required to disclose – during the solicitation – the percentage of funds received that would be passed along to the charity. *See Riley*, 487 U.S. at 796.

regarding the merits of the Act. Plaintiffs remain free to share with their employees, in the handbooks or elsewhere, their moral, political, and religious views, their expectations for employees, and even their disagreement with the Act. To the extent Plaintiffs contend that merely including the required notice in a handbook "could be viewed as sending the message that they see nothing wrong with" the policy judgment underlying the Act, that argument is foreclosed by *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 64-65 (2006). There, the Supreme Court held that requiring a private entity to accommodate a message is not compelled speech where the accommodation does not usurp the entity's ability to express its own message. *See id.*

Furthermore, an employer cannot insulate itself against required legal notifications – in a handbook or otherwise – simply because the employer chooses to use the handbook, bulletin board, or other mechanism to communicate its own views, as well as required notices.[18] Taking Plaintiffs'

---

[18] Indeed, the Notice Provision's limitation to handbooks significantly diminishes its effect on employers in two ways. First, by requiring notification in the employee handbook rather than as a posting in the office, the Notice Provision "ensures that no one other than the employer's employees sees or learns of information that relates to employee reproductive rights." Joint App'x at 325 (Decl. of Maura McCann ¶18). Second, an employer wishing to avoid the Notice Provision's requirement may simply elect not to issue a handbook.

argument to its logical conclusion, *any* law requiring workplace notification would be subjected to strict scrutiny – and face a meaningful chance of invalidation – simply because an employer chose to use a handbook, bulletin board, or other method of communication to convey its own views. An advocacy group dedicated to repealing the federal minimum wage, and which chooses to inculcate its employees with this viewpoint in "conspicuous places" in its offices, could trigger strict scrutiny of the minimum-wage notification requirements of 29 C.F.R. §516.4 by contending that the notice dilutes its message. A labor union or pro-union government contractor that proclaims its belief in the merits of union membership on bulletin boards in the workplace could trigger strict scrutiny of an executive order requiring employers to post notices of employees' rights not to join a union. *See UAW-Lab. Emp. & Training Corp. v. Chao*, 325 F.3d 360, 362 (D.C. Cir. 2003). But this nation has a longstanding tradition of permitting the government to protect employees by requiring that their employers notify them of their rights, and such notices are permissible – even if compelled – if they withstand a rational basis review. *See Brown*, 564 U.S. at 795.

## C.  Application of *Zauderer* to the Notice Provision

We are also satisfied that the Notice Provision is limited to "purely factual and uncontroversial information about" the terms of employment under New York law; we therefore also apply the standard of rational basis review set out in *Zauderer*. 471 U.S. at 651. Applying that standard, we easily conclude that the Notice Provision is "reasonably related to the State's interest in preventing deception of" employees as to their statutory rights, and that the Notice Provision's prescribed method of notification is not "unjustified or unduly burdensome." *Id.*

As Plaintiffs themselves explain, handbooks are often used to "convey details critical to achieving . . . organizational goals." Plaintiffs' Reply Br. at 35. The State has reasonably determined that requiring employers who use a handbook to include a "notice of employee rights and remedies under" the Act, N.Y. Lab. Law §203-e(6), provides valuable information to employees about a law that may – or indeed, may not – apply to them. As discussed, this sort of disclosure requirement is common and well-established in federal and state employment laws. Finally, the Notice Provision is not "unduly burdensome." *Zauderer*, 471 U.S. at 651. It does not impair Plaintiffs' ability to convey their own

37

beliefs, nor does it directly contradict Plaintiffs' core mission and message. Plaintiffs remain free to oppose the Act, and the policy judgments that underlie it, and have many avenues to do so.

To be sure, in the event that one or more of the Plaintiffs succeeds on remand in stating an expressive-association claim, the District Court will need to determine whether the required notice is factually accurate and not misleading as applied to each Plaintiff so as to pass muster under *Zauderer*. *See id.* Accordingly, in light of *Slattery*, we vacate the grant of summary judgment to Plaintiffs on the Notice Provision and the permanent injunction barring its enforcement. We remand for the District Court to determine, in the event that any of the Plaintiffs has plausibly alleged an expressive-association claim, whether the Notice Provision should apply to such Plaintiffs.

## IV.  Plaintiffs' Remaining Claims

Plaintiffs raise two other arguments. First, they argue that the Act's Discrimination Provision and Waiver Provision violate their First Amendment freedom of speech. Second, they argue that the Act violates their First Amendment right to the free exercise of religion. Plaintiffs acknowledge, however, that this Court rejected these arguments in *Slattery*, 61 F.4th at 291-93.

38

We see no basis on which to distinguish *Slattery* as to these claims. We therefore affirm the District Court's dismissal of the challenges to the Discrimination Provision and Waiver Provision.

## A.  Freedom of Speech

Plaintiffs argue that the Act's Discrimination Provision amounts to a content-based restriction on speech because it forces them to retain employees who cannot convey their message credibly. Similarly, they argue that the Waiver Provision restricts their speech by prohibiting them from ensuring that their employees follow their beliefs.

These arguments fall short because Plaintiffs do not adequately allege that their employee hiring and retention decisions amount to protected expression. *See id.* at 291-92. "It is possible to find some kernel of expression in almost every activity a person undertakes – for example, walking down the street or meeting one's friends at a shopping mall – but such a kernel is not sufficient to bring the activity within the protection of the First Amendment." *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989). "In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we have asked whether an intent to convey a particularized message was present,

39

and whether the likelihood was great that the message would be understood by those who viewed it." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (citation and quotation marks omitted).

Plaintiffs allege that the Act "forbids them from maintaining and communicating employment standards of conduct in accordance with organizational beliefs." Joint App'x at 52 (Compl. ¶264). But they do not allege that their action in hiring or firing employees is itself expressive. They also do not allege that terminating an employee who made a particular reproductive health decision is intended to convey a particularized message, or that listeners will understand it as such. *See Slattery*, 61 F.4th at 291-92. We therefore affirm the District Court's dismissal of this claim.

### B.    Free Exercise

Plaintiffs further argue that the Act intrudes on their religious practice by forcing them to retain employees whose actions are at odds with their beliefs. We have been clear that "the Free Exercise Clause 'does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Cent. Rabbinical Cong. of U.S. & Canada v. N.Y.C. Dep't*

40

*of Health & Mental Hygiene*, 763 F.3d 183, 193 (2d Cir. 2014) (quoting *Empl. Div.,*

*Dep't of Hum. Resources of Or. v. Smith*, 494 U.S. 872, 879 (1990)).

"A law is not neutral . . . if it is specifically directed at a religious practice."

*Id.* (citation and quotation marks omitted). The Act challenged here is facially

neutral, applying to religious and non-religious employers alike. *See* N.Y. Lab.

Law §203-e(1), (2). Plaintiffs allege that the Act's passage was motivated by

hostility towards their religious beliefs, pointing to a statement by the Act's

sponsor that its purpose was to prevent employers' "personal and political

beliefs" from "encroach[ing]" on employees' reproductive health care decisions.

Joint App'x at 19 (Compl. ¶13); *see also* Compl. Ex. 2 at 433-34, *CompassCare v.*

*Cuomo*, 1:19CV01409(TJM) (N.D.N.Y. Nov. 14, 2019), ECF No. 1-2. However, the

legislative history of the Act, as summarized in attachments to the Complaint,

reveals that the purpose of the legislation was to prevent discrimination based on

reproductive health care decisions and to promote privacy, rather than to target

religion. *See, e.g.*, Compl. Ex. 4, *CompassCare v. Cuomo*, 1:19CV01409(TJM)

(N.D.N.Y. Nov. 14, 2019), ECF No. 1-4; *see also Slattery*, 61 F.4th at 293.

"The general applicability requirement prohibits the government from in a

selective manner imposing burdens only on conduct motivated by religious

belief." *Cent. Rabbinical Cong.*, 763 F.3d at 196 (citation and quotation marks omitted). Plaintiffs do not argue that the Act is not generally applicable to all employers, regardless of religious affiliation; the only allegation in the Complaint related to general applicability is that the Act "is not neutral or generally applicable because it imposes its notice requirement only upon employers who maintain an employee handbook." *See* Joint App'x at 57 (Compl. ¶313); Plaintiffs' Br. at 32. But the "general applicability" test addresses distinctions that burden religious practice *specifically* – not routine management decisions. *See Cent. Rabbinical Cong.*, 763 F.3d at 196-97. Plaintiffs do not claim that any employer's decision to use (or to not use) an employee handbook is motivated by religious belief, or that their own decisions to use employee handbooks are part of their religious practice. *See Slattery*, 61 F.4th 292-93. Accordingly, we affirm the dismissal of Plaintiffs' free exercise claims.

## V.    Conclusion

For the reasons stated above, we **AFFIRM** the judgment of the District Court dismissing Plaintiffs' free speech and free exercise claims. We **VACATE** the judgment of the District Court dismissing Plaintiffs' expressive-association claims and **REMAND** for further proceedings consistent with this opinion.

We **VACATE** the grant of summary judgment for Plaintiffs on the Notice

Provision and **VACATE** the permanent injunction.