**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SUNIL KUMAR, Ph.D., PRAVEEN SINHA, Ph.D., | No. 23-4363 |
| *Plaintiffs-Appellants*, | D.C. No. 2:22-cv-07550-RGK-MAA |
| v. | |
| DR. JOLENE KOESTER, in her official capacity as Chancellor of California State University; LARRY ADAMSON; DIANA AGUILAR-CRUZ; DIEGO ARAMBULA; JACK B. CLARKE, Jr.; DOUGLAS FAIGIN; JEAN P. FIRSTENBERG; WENDA FONG; LESLIE GILBERT-LURIE; LILLIAN KIMBELL; MARIA LINARES; JULIA I. LOPEZ; JACK MCGRORY; ANNA ORTIZ-MORFIT; YAMMILETTE RODRIGUEZ; ROMEY SABALIUS; LATEEFAH SIMON; CHRISTOPHER STEIN HAUSER; JOSE ANTONIO VARGAS, in their official capacities as trustees of California State University, | OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Central District of California
Hon. R. Gary Klausner, District Judge, Presiding

Argued and Submitted January 16, 2025
Pasadena, California

Filed March 12, 2025

Before: Richard C. Tallman, Michelle T. Friedland, and
Mark J. Bennett, Circuit Judges

Opinion by Judge Tallman

## SUMMARY[*]

### Article III Standing

Affirming the district court's dismissal of constitutional claims brought by California State University ("CSU") professors who challenged the inclusion of "caste" as a protected class in CSU's anti-discrimination and harassment policy (the "Policy"), the panel held that the professors lacked Article III standing.

Appellants are CSU professors of Indian descent and adherents to the Hindu religion who allege that the Policy attributes a caste system to Hinduism by adding "caste" as a

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

protected class, thereby stigmatizing their religion and causing them to self-censor certain religious practices.

The panel first held that appellants failed to demonstrate Article III standing for their Due Process Clause claim that the Policy is unconstitutionally vague because it does not define the term caste. The panel agreed with the district court that appellants lacked sufficient injury for a pre-enforcement challenge. They failed to show that they intended to engage in any religious practice that could reasonably constitute caste discrimination or harassment, such that the Policy would be enforced against them. Appellants' fear that their non-discriminatory practices could be misconstrued as discriminatory, even if theoretically possible, was not reasonable or imminent and thus was insufficient to demonstrate an injury in fact.

The panel next held that appellants failed to demonstrate Article III standing for their Free Exercise claim. They alleged no injury to their ability to exercise their religion; rather, their claims only indicated that they are offended by the alleged association of the caste system with Hinduism.

Finally, the panel held that appellants failed to demonstrate Article III standing for their Establishment Clause claim, which alleged a spiritual injury —stigma from belonging to a religion that CSU has impermissibly defined and disparaged. The panel held that the district court's factual finding on a fully developed record that the Policy has no hostility toward religion was not clearly erroneous. If the Policy does not stigmatize Hinduism, appellants have no spiritual injury and therefore they lack standing.

## COUNSEL

Michael K. Twersky (argued) and Alberto M. Longo, Fox Rothschild LLP, Blue Bell, Pennsylvania; Meeghan Tirtasaputra and John J. Shaeffer, Fox Rothschild LLP, Los Angeles, California; Nathan Wilson, Fox Rothschild LLP, Raleigh, North Carolina; for Plaintiffs-Appellants.

Jeffrey P. Michalowski (argued), Adrielli Ferrer, and Matthew W. Burris, Quarles & Brady LLP, San Diego, California; William C. Hsu, Office of General Counsel, California State University, Long Beach, California; for Defendants-Appellees.

Bradley Girard and Kalli A. Joslin, Americans United for Separation of Church and State, Washington, D.C., for Amicus Curiae Americans United for Separation of Church and State.

## OPINION

TALLMAN, Circuit Judge:

The central issue in this case is whether California State University ("CSU") professors have Article III standing to bring Due Process, Free Exercise, and Establishment Clause claims alleging that CSU's anti-discrimination and harassment policy (the "Policy") attributes a caste system to Hinduism merely by adding "caste" as a protected class. Appellants allege that the Policy's inclusion of "caste" stigmatized their religion and caused them to self-censor certain religious practices, like celebrating holidays and discussing religious texts. We hold that Appellants failed to demonstrate Article III standing to bring any of these claims.

# I

## A

We first provide background on the term "caste." Following a bench trial on the briefs and record, the district court made the following factual findings regarding the definition and use of the term, which we adopt: "Caste" is an expansive term referring to social hierarchies that exist across the world in many religions and societies, including in the United States.  The Oxford English Dictionary contains eight definitions of "caste," one of which is "[a]ny of the (usually hereditary) classes or social ranks into which Hindu society is traditionally divided; a class of this sort forming part of a hierarchal social structure traditional in some parts of South Asia."  The parties here both acknowledge that caste systems impact Hindus as well as Christians, Buddhists, Sikhs, and Muslims.

But "caste" is not exclusively a religious concept.  The Supreme Court has used the term to signify social class without reference to any particular religion.  Justice Harlan's dissent in *Plessy v. Ferguson* understood "caste" as a social concept, not a religious one.  163 U.S. 537, 559 (1896) (Harlan, J., dissenting).  "Caste" was mentioned multiple times throughout the Supreme Court's recent affirmative action decision without reference to religion.  *Students for Fair Admissions v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 230 (2023); *id.* at 239, 250, 258, 260, 278, 280–81 (Thomas, J., concurring).

The existence of discrimination based on caste has received legal recognition both abroad and in the United States.  There are also documented incidents of caste discrimination in the United States and recent lawsuits in

California, New Jersey, and New York have alleged caste discrimination.

**B**

We now turn to the facts before us. On January 1, 2022, CSU instituted an "Interim CSU Policy Prohibiting Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation based on listed protected classes." In that interim policy, which became final in January 2023, CSU added the word "caste" to further define the protected class of "Race or Ethnicity." The relevant language states:

> CSU prohibits the following conduct, as defined in Article VII. Discrimination based on any Protected Status: i.e., Age, Disability (physical and mental), Gender (or sex, including sex stereotyping), Gender Identity (including transgender), Gender Expression, Genetic Information, Marital Status, Medical Condition, Nationality Race or Ethnicity (including color, caste, or ancestry), Religion (or religious creed), Sexual Orientation, and Veteran or Military Status.

The Policy does not define "caste." CSU released a "Q&A Caste Inclusion in CSU Discrimination Policy" document, which states that "[t]he inclusion of caste was not added as a specific and separate protected category, but as a parenthetical reference to clarify we consider caste, color and ancestry to be included within the already-existing categories of race or ethnicity." Neither the Policy nor the Q&A document mention Hinduism.

CSU's Q&A explains that "the same analysis campus investigators use to determine other forms of discrimination will be applied to allegations of caste discrimination." The Policy defines "Discrimination" as "Adverse Action(s) against a Complainant because of their Protected Status." An "adverse action" is defined as:

> [A]n action engaged in by the Respondent that has a substantial and material adverse effect on the Complainant's ability to participate in a university program, activity, or employment. Minor or trivial actions or conduct not reasonably likely to do more than anger or upset a Complainant does not constitute an Adverse Action. An adverse employment action is any conduct or employment action that is reasonably likely to impair an employee's job performance or prospects for advancement or promotion.

Additionally, the Policy prohibits harassment, which is defined as "unwelcome verbal, nonverbal or physical conduct engaged in because of an individual Complainant's Protected Status." "Harassment includes, but is not limited to, verbal harassment (e.g., epithets, derogatory comments, or slurs), physical harassment (e.g., assault, impeding or blocking movement, or any physical interference with normal work or movement), and visual forms of harassment (e.g., derogatory posters, cartoons, drawings, symbols, or gestures.)." However, "[s]ingle, isolated incidents will typically be insufficient to rise to the level of harassment."

Plaintiff-Appellants Sunil Kumar and Praveen Sinha are CSU professors of Indian descent and adherents to the Hindu

religion. On February 28, 2023, Appellants filed the operative First Amended Complaint ("complaint") in the Central District of California against Defendant-Appellee Jolene Koester in her official capacity as Chancellor of CSU, alleging that she is responsible for "adopting and/or enforcing" the Policy.

The complaint alleges violations of the First and Fourteenth Amendments of the United States Constitution under 42 U.S.C. § 1983 and equivalent claims under the California Constitution. It seeks a declaratory judgment stating that the inclusion of the word "caste" in the Policy is unconstitutional, and an injunction to prevent Appellee from enforcing the "caste" provision of the Policy.

The complaint alleges that the Policy violates the Due Process Clause as unconstitutionally vague because the Policy does not define the term "caste," and the term "is not . . . understood by people of ordinary intelligence." It alleges that the Policy violates the Religious Clauses of the First Amendment by defining the Hindu religion as including a caste system, and in doing so, "ascrib[es] an oppressive and discriminatory caste system to the entire Hindu religion." This allegedly amounts to "singl[ing] out" Hinduism "for ridicule by ascribing [to it] tenets that are not part of" Hinduism and that Hindus "find repugnant." The complaint alleges that the Policy violates the Equal Protection Clause because, by adding "caste," the Policy "singles out" Hindus and those of "Indian/South Asian origin" whereas "[n]o other Protected Status . . . addresses any specific ethnicity, ancestry, religion or alleged religious practice[.]"

However, the complaint also alleges that Appellants "hold the sincere religious belief that neither caste nor a

discriminatory caste system are in any way part of the Hindu religion or its teachings." And "[t]o the contrary, [Appellants] abhor the notion that a caste system is a tenet of Hinduism and sincerely believe that the Hindu religion's core principals are compassion, equanimity, generosity, and equal regard for all humans in order to honor the divine in everyone, which is directly contrary to a discriminatory caste system."

On May 18, 2023, Appellee moved for judgment on the pleadings to dismiss all claims for lack of standing, and in the alternative, for failing to state a claim. The district court granted the motion in part and denied it in part. The court dismissed Appellants' Equal Protection claim and the equivalent state law claim for lack of standing. The court dismissed Appellants' Free Exercise claim and the equivalent state law claim for failing to state a claim without deciding standing. The court held that Appellants had standing to bring their Establishment Clause and Due Process claims and the equivalent state law claims. Those claims, along with the claim for declaratory relief, proceeded to a bench trial on the briefs.

In its bench trial opinion, the district court entered judgment for Appellee by dismissing the Due Process and Establishment Clause claims and the equivalent state law claims. The court first reversed its earlier ruling that Appellants had standing to bring their Due Process claim and equivalent state law claim. Applying the Supreme Court's test for assessing injury in a pre-enforcement challenge, the court found that Appellants failed to demonstrate a sufficient injury. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159, 162 (2014) (describing the test). The court declined to reexamine standing for the Establishment Clause claim and equivalent state law claim. Instead, it dismissed those claims

on the merits, finding that the Policy does not impermissibly define Hinduism to include a discriminatory caste system, nor does it express government disapproval of the religion. The court dismissed Appellants' declaratory relief claim because it was derivative of the dismissed claims.

Appellants timely appealed the dismissal of their Due Process, Free Exercise, and Establishment Clause claims.[1] Appellants did not appeal the dismissal of their Equal Protection claim.

## II

We review the district court's conclusions of law de novo and its factual findings for clear error. *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1167 (9th Cir. 2002) (citation omitted) (stating standard applies to orders for judgment on the pleadings); *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 612 (9th Cir. 2020) (citation omitted) (stating standard applies to actions decided by bench trial).

## III

This case hinges on Article III standing. "The fundamentals of standing are well-known and firmly rooted in American constitutional law." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). A plaintiff must demonstrate that (1) they have suffered or likely will suffer an "injury in fact"; (2) that "the injury likely was caused or will be caused by the defendant"; and (3) that judicial relief would likely redress the injury. *Id.* (first citing

---

[1] Appellants have not made any arguments on appeal as to any of their state law claims and have therefore forfeited any appeal of the rulings on those claims. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929–30 (9th Cir. 2003).

*Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); and then citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim" "with the manner and degree of evidence required at the successive stages of the litigation." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (first citing *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008); and then quoting *Lujan*, 504 U.S. at 561).

Injury in fact is the threshold requirement for standing and can be difficult to satisfy. *Id.* at 429. The injury must be "concrete" to ensure that it is "real and not abstract," and "particularized" so that it "affect[s] 'the plaintiff in a personal and individual way'" as opposed to a "generalized grievance." *FDA*, 602 U.S. at 381 (quoting *TransUnion LLC*, 594 U.S. at 424; and then quoting *Lujan*, 504 U.S. at 560 n.1). A plaintiff need not wait until the injury occurs as long it is "certainly impending." *Driehaus*, 573 U.S. at 158–59 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)). A plaintiff has a sufficient injury for a pre-enforcement challenge where they allege "[(1)] an intention to engage in a course of conduct arguably affected with a constitutional interest, but [(2)] proscribed by a statute, and [(3)] there exists a credible threat of prosecution thereunder." *Id.* at 159–60 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

## A

We first explain why Appellants failed to demonstrate Article III standing for their Due Process claim. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *see*

*id.* ("[W]e insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning." (citations omitted)).  Appellants claim that the Policy violates the Due Process Clause because "caste" is a vague term, and that because it is not defined, those subject to the Policy do not have notice of what constitutes discrimination and harassment on the basis of caste.  Without reaching the merits of this claim, the district court dismissed it on the ground that Appellants had not alleged a sufficient injury for a pre-enforcement challenge.  We agree.

To be sure, Appellants satisfied the first *Driehaus* prong because they alleged "an intention to engage in a course of conduct arguably affected with a constitutional interest." *Driehaus*, 573 U.S. at 159–60.  It is undisputed that Appellants are practicing Hindus.  Practicing one's religion is a protected First Amendment activity that satisfies the first prong. *Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 59–60 (9th Cir. 2024) (holding first *Driehaus* prong was satisfied where Christian university brought Free Exercise pre-enforcement challenge to anti-discrimination law based on religiously motivated practice of prohibiting employees' same-sex relationships); *see also Driehaus*, 573 U.S. at 162 ("Because petitioners' intended future conduct concerns political speech [under the First Amendment], it is certainly affected with a constitutional interest." (internal quotation marks and citation omitted)).

But Appellants failed to satisfy the second *Driehaus* prong.  Even after a fully developed record, Appellants failed to show that they intend to engage in any religious practice that could reasonably constitute caste discrimination or harassment such that the Policy would be

enforced against them. In fact, the record suggests the opposite: Appellants intend to *comply* with the Policy, not to violate it. The complaint states that Appellants "applaud CSU's effort to take a firm stance in favor of inclusion and against discrimination—something on which they are in complete agreement . . . ." This is because they "abhor" caste discrimination and do not believe that caste is "in any way part of the Hindu religion or its teachings." Instead, Appellants insist that Hinduism's "core principals are compassion, equanimity, generosity, and equal regard for all humans . . . which is directly contrary to a discriminatory caste system." Appellants maintained these assertions throughout the litigation.

Therein lies the standing conundrum. How can Appellants be injured by a policy prohibiting conduct that they have no intention to engage in? Appellants claim that their injury is self-censorship of nondiscriminatory religious conduct out of fear that such conduct could be misinterpreted as discriminatory given that "caste" is not defined. But self-censorship is only an injury in fact where Appellants demonstrate "an actual and well-founded fear that the law will be enforced against [them]." *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003) (quoting *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988)); *accord Driehaus*, 573 U.S. at 159–60 (stating constitutionally protected conduct must be "proscribed by a statute, and there exists a credible threat of prosecution thereunder" (internal quotation marks and citation omitted)). Although Appellants are not required "to confess that [they] will in fact violate that law," this fear of prosecution must not be "imaginary or wholly speculative." *Driehaus*, 573 U.S. at 160, 163 (citation omitted).

Yet, even after full discovery, that is all Appellants have shown. Appellant Sinha expressly acknowledged that the Policy had no impact on his religious practices. Appellant Kumar testified at his deposition that he was "very worried" that celebrating a religious festival could "become a big problem" and that "there can be [a] complaint against me," and so he does "not talk about" religious texts such as the Bhagavad Gita. But Appellants have not offered any evidence that celebrating a Hindu festival outside of their workplace, or speaking about doing so within their workplace, constitutes discrimination or harassment as defined by the Policy on *any* basis, let alone on the basis of caste. *See Clapper*, 568 U.S. at 420 (stating a plaintiff may not rely "on mere conjecture about possible governmental actions" to establish injury in fact, but must have "concrete evidence to substantiate their fears"). In fact, the district court made a factual finding that this conduct would be *protected* by the Policy, not *proscribed*, since the Policy prohibits discrimination and harassment based on religion. Nothing compels us to hold that this finding is clearly erroneous.

Appellants' fear that non-discriminatory practices could be misconstrued as discriminatory, even if "theoretically possible[,] is not reasonable or imminent" and thus is not enough to demonstrate injury in fact. *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1141 (9th Cir. 2000) (en banc); *accord Driehaus*, 573 U.S. at 159–60. Because Appellants failed to meet the second *Driehaus* prong to demonstrate an injury, we have no reason to turn to the third prong, and their Due Process claim fails for lack of Article III standing.

**B**

We next explain why Appellants failed to demonstrate Article III standing for their Free Exercise claim.  The Free Exercise Clause prohibits government entities from burdening a plaintiff's "sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Loffman v. Cal. Dep't of Educ.*, 119 F.4th 1147, 1165 (9th Cir. 2024) (quoting *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022)).  Without deciding standing, the district court dismissed this claim at the pleading stage for failing to state a claim because Appellants did not allege that the Policy burdened any of their religious practices.  The court made two errors in its analysis.

First, the court should not have bypassed standing to decide a non-jurisdictional issue.  *See Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997) (explaining that courts may assume standing only to resolve another jurisdictional issue, like mootness, because both "go[] to the Article III jurisdiction of this Court and the courts below, not to the merits of the case").  Second, the court erred in stating that the Free Exercise claim was subject to "relaxed justiciability requirements for a First Amendment facial challenge" instead of applying the *Driehaus* test for injury in a pre-enforcement challenge.  *Driehaus* certainly applies to First Amendment cases; it *was* a First Amendment case. *Driehaus*, 573 U.S. at 159 (applying its test to pre-enforcement Freedom of Speech claim).  We have since applied *Driehaus* to a pre-enforcement Free Exercise claim without question.  *See Seattle Pac. Univ.*, 104 F.4th at 59.  In applying *Driehaus* now, we hold that Appellants failed to establish an injury for their Free Exercise claim for the same reasons that they failed to do so for their Due Process claim.

As explained above, Appellants satisfied the first *Driehaus* prong because practicing their religion is a constitutionally protected activity. But they failed to satisfy the second prong because they have not demonstrated that any of their religious practices are arguably proscribed by the Policy. *Compare id.* (holding Christian university with employee conduct code that prevents same sex relationships met second *Driehaus* prong because that practice was religiously based and arguably proscribed by state law barring employment discrimination based on sexual orientation).

We conclude that Appellants have alleged no injury to their ability to exercise their religion. Rather, their claims only indicate that they are offended by an alleged association of the caste system with Hinduism. This is the exact "moral, ideological, or policy objection to a particular government action" that the injury in fact requirement is meant to "screen[] out." *FDA*, 602 U.S. at 381. Because Appellants failed to satisfy the *Driehaus* test to demonstrate a pre-enforcement injury, their Free Exercise claim also fails for lack of Article III standing.

## C

Finally, we explain why Appellants failed to demonstrate Article III standing for their Establishment Clause claim. The Establishment Clause prohibits governments from making any "law respecting an establishment of religion." U.S. Const. amend. I. The Supreme Court has interpreted this to mean that "one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982). Although the Policy does not reference Hinduism, Appellants argue that merely including the term "caste"

creates an implied link to Hinduism.  This, Appellants argue, defines Hinduism to include a discriminatory caste system, which amounts to government disapproval of the religion. After holding that Appellants established standing at the pleading stage, the district court dismissed this claim on the merits in its bench trial opinion.

We acknowledge that "[c]ourts regularly have noted that it can be difficult to determine whether an Establishment Clause plaintiff has alleged an 'injury in fact' for purposes of Article III standing." *Cath. League for Religious & C.R. v. City & County of San Francisco*, 624 F.3d 1043, 1065 (9th Cir. 2009) (en banc) (Graber, J., dissenting).  "Unlike most other types of cases, in which the plaintiff suffers a physical injury or a pecuniary loss, the plaintiff in an Establishment Clause case usually does not suffer those types of harm." *Id.* at 1066.  Instead, Establishment Clause injury is often "spiritual or psychological" as a result of a government action that is not neutral toward a religion.  *See id.* at 1050 (majority opinion).  As such, applying *Driehaus* would do little to determine whether an Establishment Clause injury has occurred.  Appellants allege that they suffered spiritual harm by the *existence* of a policy that defines and disparages their religion—whether the Policy is likely to be *enforced* against them has no bearing on that alleged spiritual injury. *See id.* at 1049–50 (collecting Establishment Clause cases where plaintiffs had standing "even though nothing was affected but the religious or irreligious sentiments of the plaintiffs").

But the alleged hostility must have a plausible connection to the plaintiff.  *Id.* at 1053 (holding San Francisco Catholics and local Catholic advocacy group had standing to sue city under Establishment Clause for an allegedly disparaging city resolution because complaint

alleged "(1) [plaintiffs] live in San Francisco; (2) they are Catholics; (3) they have come in contact with the resolution; (4) the resolution conveys a government message of disapproval and hostility toward their religious beliefs; that (5) sends a clear message that they are outsiders, not full members of the political community; (6) thereby chilling their access to the government; and (7) forcing them to curtail their political activities to lessen their contact with defendants" (internal quotation marks omitted)); *see also Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 487 (1982) (holding residents of Maryland and Virginia with organizational headquarters in Washington, D.C. lacked standing to challenge a property transfer in Pennsylvania in part because they lived beyond the community where the challenged law applied).

Likening Appellants' claimed injury to the plaintiffs in *Catholic League*, the district court held that Appellants "demonstrate an injury in fact, as they plausibly allege that the Policy stigmatizes Hinduism" and that the injury is concrete and particularized because Appellants "are CSU employees and practitioners of the Hindu faith." We do not decide whether the complaint alleged sufficient facts to demonstrate Appellants' alleged stigma at the pleading stage, because we hold that Appellants failed to maintain standing by the time of trial. The Supreme Court has made clear that "plaintiffs must demonstrate standing for each claim" "with the manner and degree of evidence required at the successive stages of the litigation." *TransUnion LLC*, 594 U.S. at 431 (citations omitted). "[I]n a case like this that proceeds to trial, the specific facts set forth by the plaintiff to support standing must be supported adequately by the

evidence adduced at trial." *Id.* (internal quotation marks and citations omitted).

The district court declined to reexamine standing at the trial stage after Appellee raised it, reasoning that "[t]he procedural posture of this case does not affect [Appellants'] standing because '[s]tanding is not about who wins the lawsuit; it is about who is allowed to have their case heard in court'" (third alteration in original) (quoting *Cath. League*, 624 F.3d at 1048). But the court took this language in *Catholic League* out of context. We were explaining the difference between analyzing standing at the pleading stage versus analyzing whether a complaint adequately states a claim for relief.[2] We were not discussing the requirement to maintain standing at a later stage in the proceedings; there was no need to since that case was dismissed at an early stage.

Because Appellants' alleged spiritual injury—stigma from belonging to a religion that CSU has impermissibly defined and disapproved of—is entangled with the merits of their Establishment Clause claim, the district court's rationale for dismissing the claim on the merits explains why Appellants failed to maintain standing. After a fully developed record, the district court made a factual finding that the Policy had no hostility toward religion. It based that finding on (1) the fact that the Policy does not mention Hinduism; (2) dictionary definitions show "caste" is "readily defined without reference to Hinduism" as a "distinct class

---

[2] The full quote reads: "Standing, or the lack of it, may be intertwined with whether the complaint states a claim upon which relief can be granted, but it is not the same thing. Standing is not about who wins the lawsuit; it is about who is allowed to have their case heard in court." *Cath. League*, 624 F.3d at 1048 (citations omitted).

or rank in any society"; and (3) the absence of evidence that Appellee or the Policy's stakeholders expressed "anti-Hindu sentiments."   The district court also concluded that Appellants did not offer any evidence connecting Appellee to allegedly anti-Hindu opinions expressed by faculty and student groups that supported the Policy.  Because we hold that those findings were not clearly erroneous, they foreclose Appellants' standing argument.  If the Policy does not stigmatize Hinduism, Appellants have no spiritual injury. And if there is no injury, there is no standing.  *TransUnion LLC*, 594 U.S. at 417.  Appellants' Establishment Clause claim fails for lack of Article III standing.

### D

Appellant also brought a claim for declaratory relief seeking a judgment that the Policy is unconstitutional. Because this claim merely seeks a particular remedy for Appellants' constitutional claims for which we affirm dismissal, the district court did not err in dismissing it.  *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671– 72 (1950) (explaining that the Declaratory Judgment Act merely added a remedy to a federal court's set of remedial options).

### IV

For the foregoing reasons, we AFFIRM judgement for Appellee and REMAND for entry of judgment of dismissal without prejudice.  *See Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) ("In general, dismissal for lack of subject matter jurisdiction is without prejudice.").