**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| FOOTHILLS CHRISTIAN MINISTRIES; JOURNEY COMMUNITY CHURCH; GROVE CHURCH, | No. 24-4049 |
| | D.C. No. 3:22-cv-00950-BAS-DDL |
| *Plaintiffs - Appellants*, | |
| v. | OPINION |
| KIM JOHNSON, in her official capacity as Director of the California Department of Social Services; ROB BONTA, in his official capacity as Attorney General of the State of California, | |
| *Defendants - Appellees*. | |

Appeal from the United States District Court
for the Southern District of California
Cynthia A. Bashant, District Judge, Presiding

Argued and Submitted June 5, 2025
Pasadena, California

Filed August 14, 2025

Before: Andrew D. Hurwitz, Eric D. Miller, and Jennifer Sung, Circuit Judges.

Opinion by Judge Hurwitz

## SUMMARY[*]

### First Amendment/Standing

The panel affirmed the district court's dismissal, for lack of standing and for failure to state a claim, of a pre-enforcement challenge brought by three California churches (collectively "Foothills") alleging that the California Child Day Care Facilities Act (the "Act") and its regulations violate the Free Exercise, Free Speech and Establishment Clauses of the First Amendment, and the Due Process Clause of the Fourteenth Amendment.

The Act and its regulations require that child day care facilities (1) be licensed by the Department of Social Services; (2) ensure that children be free to attend religious services or activities of their choice, as decided by a child's authorized representative; and (3) provide notice to a child's authorized representative of their right to make decisions about the child's attendance at religious services.

Foothills first alleged that the Act's provisions pertaining to religious services attendance violate the Free Exercise Clause because its religious beliefs do not allow it to provide

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

personal religious autonomy for children who have been enrolled in its preschool. The panel held that Foothills lacked standing to bring this pre-enforcement Free Exercise Clause challenge because, even assuming that Foothills' intended conduct was within the Act's reach, the threat of prosecution was too speculative.

The panel next held that Foothills had standing to challenge the Act's licensure requirement under the Free Exercise Clause because Foothill's proposed conduct—operating without a license—was proscribed by statute and it was likely that California would enforce the general licensure requirement. On the merits, the panel rejected Foothills' argument that the licensing provision violates the Free Exercise Clause because it exempted comparable secular child recreational programs and therefore was not generally applicable. The licensing exemption applied only to recreational programs, not child day care programs and so it created no mechanism for granting individualized exemptions for such facilities. The panel concluded that the licensure requirement was neutral and generally applicable and therefore rational basis review applied. The licensure requirement satisfied this standard because the State has a vital governmental interest in the protection of children, and the licensure requirement was rationally related to this interest.

The panel rejected Foothills' argument that the Act's licensure requirement violates the Establishment Clause because it exempts certain sectarian organizations, such as the YMCA and Boy Scouts of America. The panel held that this exemption draws no lines based on religion. Instead, it exempts a certain type of programming from the licensure requirement. If Foothills sought to operate a recreation program, it would not be subject to the Act.

The panel held that Foothills had standing to challenge under the Free Speech Clause the Act's notice requirement that parents be informed of their right to have their children attend religious services of their choice. On the merits, the panel held that the notice requirement required only the disclosure of purely factual and uncontroversial information, and therefore, the lower standard of scrutiny for compelled commercial speech applied. The panel concluded that the notice provision was reasonably related to the State's substantial governmental interest in protecting children in day care facilities, and it was not unjustified or unduly burdensome.

Finally, the panel rejected Foothills' contention that the Act violates the Due Process Clause by imposing unconstitutional conditions as a precondition and continual condition for licensure. The panel found meritless Foothills' assertions that the Act requires an unconstitutional waiver of the (1) Fourth Amendment's protection against unreasonable searches, (2) Fifth Amendment right against self-incrimination, (3) Sixth Amendment right to confront one's accuser, and (4) Seventh Amendment right to a jury trial.

The panel affirmed the judgment of the district court but remanded with instructions to amend the judgment to provide that the dismissal of Foothills' Free Exercise Clause challenge to the religious services provision be without prejudice.

## COUNSEL

Kevin T. Snider (argued) and Matthew McReynolds, Pacific Justice Institute, Sacramento, California, and Plaintiffs-Appellants.

Todd Grabarsky (argued), Deputy Attorney General, California Department of Justice, Los Angeles, California; Emmanuelle S. Soichet, Deputy Attorney General; Gregory D. Brown, Supervising Deputy Attorney General; Cheryl L. Feiner, Senior Assistant Attorney General; Rob Bonta, California Attorney General; California Department of Justice, San Francisco, California; for Defendants-Appellees.

## OPINION

HURWITZ, Circuit Judge:

The California Child Day Care Facilities Act (the "Act") requires child day care facilities to be licensed by the Department of Social Services ("DSS"). *See* Cal. Health & Safety Code § 1596.80. This case involves a pre-enforcement challenge by three California churches (collectively "Foothills")[1] to the Act and its implementing regulations. The district court dismissed Foothills' operative complaint, concluding that Foothills lacked standing to raise some claims and that others failed to state a claim upon

---

[1] The plaintiffs are Foothills Christian Ministry, the Grove Church, and Journey Community Church. The latter two plaintiffs make no arguments different than Foothills.

which relief could be granted. We affirm the judgment of the district court.

## BACKGROUND

### I.

One seeking to "operate, establish, manage, conduct, or maintain a child day care facility" [2] in California must obtain a license from DSS. *Id.* § 1596.80. A licensed facility must "comply with" the Act and relevant DSS regulations. *Id.* §§ 1596.95(a), 1596.856; *see also id.* § 1596.81 (authorizing DSS to establish "rules and regulations"). DSS may revoke a license for noncompliance. *See id.* § 1596.885(a). In granting or revoking a license, however, DSS may not consider "the content of any educational or training program of the facility." *Id.* § 1597.05(a).

DSS is responsible for ensuring compliance with the Act, *see id.* § 1596.878, and its officials are authorized to "enter and inspect" a child day care facility "at any time, with or without advance notice," *id.* § 1596.852. DSS can issue citations and impose civil penalties for noncompliance. *See id.* §§ 1596.893b(b), 1596.98(a), 1596.99. "[W]illfully or repeatedly" violating the Act is a misdemeanor punishable by up to a $1,000 fine and 180 days in prison. *Id.* § 1596.890(a). The Act "do[es] not apply to recreation programs" operated by the "YMCA, Girl Scouts of the USA, Boy Scouts of America, Boys and Girls Clubs, Camp Fire USA, organized camps, or similar organizations." *Id.*

---

[2] The Act defines a "[c]hild day care facility" as "a facility that provides nonmedical care to children under 18 years of age in need of personal services, supervision, or assistance essential for sustaining the activities of daily living or for the protection of the individual on less than a 24-hour basis." Cal. Health & Safety Code § 1596.750.

§ 1596.793. But these organizations, like all others, must obtain a license to operate a child day care facility. *See id.*

## II.

Foothills obtained a license to operate a child day care center in 2015. DSS suspended the license in 2021 based on "evidence that Foothills . . . was not complying with the department's masking directive" during the COVID-19 pandemic. After a hearing, a state administrative law judge revoked Foothills' license. Foothills did not seek judicial review of the administrative law judge's order.

Foothills' operative complaint alleges that it intends to reopen its child day care facility, but does "not want a preschool that operates at the pleasure of [DSS] through the State's licensing scheme." [3] Seeking declaratory and injunctive relief, Foothills claims that the Act and its regulations violate the (1) Free Exercise Clause of the First Amendment, (2) Establishment Clause of the First Amendment, (3) Free Speech Clause of the First Amendment, and (4) Due Process Clause of the Fourteenth Amendment. The district court dismissed the Free Speech and Free Exercise claims for lack of standing and the Establishment Clause and Due Process claims for failure to state a claim. After Foothills declined to amend its operative complaint, the district court entered a final judgment in favor of the state defendants, and Foothills timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291 and review dismissals for failure to state a claim and lack of standing de

---

[3] Grove and Journey have never applied for a license but allege an intention to do so.

novo. *See N. Cnty. Cmty. All., Inc., v. Salazar*, 573 F.3d 738, 741 (9th Cir. 2009). A plaintiff must have standing for each claim raised. *See Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017). We may affirm on any ground supported by the record. *See Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008).

## DISCUSSION

### I.

The DSS regulation at the center of this litigation, the religious services provision, requires licensed facilities to "ensure" the right of a child to "be free to attend religious services or activities of his/her choice," and provides that the "child's authorized representative shall make decisions about the child's attendance at religious services." Cal. Code Regs. tit. 22, § 101223(a). The provision requires licensed facilities to "inform each child's authorized representative" of this right and post notice of it "in a prominent, publicly accessible area." *Id.* § 101223(b). Foothills alleges that this regulation violates the Free Exercise Clause of the First Amendment because its religious beliefs do not allow it to "provide personal religious autonomy for children who have been enrolled in the preschool."

To have Article III standing to raise this claim, Foothills must "have suffered an injury in fact, caused by the defendant's conduct, that can be redressed by a favorable result." *Tingley v. Ferguson*, 47 F.4th 1055, 1066 (9th Cir. 2022). While the injury-in-fact requirement does not require Foothills to "await the consummation of threatened injury" before seeking relief, *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154 (9th Cir. 2000) (cleaned up), in a pre-enforcement challenge such as this, Foothills must plausibly allege that it "intends to engage in a course of conduct arguably affected

with a constitutional interest" and that "there is a credible threat that the challenged provision will be invoked against" it, *Libertarian Party of L.A. Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) (cleaned up). At the motion to dismiss stage, "general factual allegations of injury suffice." *Tingley*, 47 F.4th at 1066 (cleaned up). In determining whether Foothills faces a credible threat of enforcement, we generally consider whether it has "articulated a concrete plan to violate the law," whether the State has "communicated a specific warning or threat to initiate proceedings," and "the history of past prosecution or enforcement under the challenged statute." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) (cleaned up); *see also Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 (9th Cir. 2003) (applying *Thomas* to determine standing and explaining that *Thomas* did not overrule long-standing precedent "recognizing the validity of pre-enforcement challenges to statutes infringing upon constitutional rights").

Where, as here, the government has not actually threatened prosecution of any plaintiff, to determine whether the threat of prosecution is nonetheless credible, we must first consider whether the plaintiff's intended conduct is at least arguably proscribed by the challenged law. *See Cal. Pro-Life Council*, 328 F.3d at 1095 ("In the free speech context, . . . a [credible] fear of prosecution will only inure if the plaintiff's intended speech arguably falls within the statute's reach."). Additionally, we consider how long the challenged law has been effective and the history of enforcement. When a plaintiff "challeng[es] a new law whose history of enforcement is negligible or nonexistent, either a general warning of enforcement or a failure to *disavow* enforcement is sufficient to establish a credible

threat of prosecution." *Matsumoto v. Labrador,* 122 F.4th 787, 797-98 (9th Cir. 2024) (cleaned up). *Cf. Thomas*, 220 F.3d at 1140 (concluding no credible threat of enforcement in part because, "[i]n the twenty-five years that [the challenged laws had] been on the books," there had not been "a single criminal prosecution, and of the two reported instances of civil enforcement, only one raised the freedom of religion issue presented").

Foothills contends that it is "self-evident that" under the religious services provision "a religious institution cannot require attendance at services or participation in faith-based activities of a pupil enrolled in its school." The State, however, has repeatedly represented both in this Court and below "that operating a day care center with a mandatory religious curriculum, where made known to prospective parents in advance of enrollment, would not violate the religious services provision." And that is precisely what Foothills plans to do. It intends to admit only children whose parents agree with Foothills' proposed "religious services and activities." *See* Cal. Code Regs. tit. 22, § 101218.1(a) (requiring a child day care facility to "develop, implement and maintain an admission procedure that enables" it to "[d]etermine that" children meet its "admission criteria"). Thus, it is unclear whether Foothills' intended conduct is even "arguably" proscribed by the challenged religious services provision. *Getman*, 328 F.3d at 1095.

But even assuming that the intended conduct is at least arguably within the provision's reach, the threat of prosecution is still too speculative. California enacted the Act in 1984, *see* 1984 Cal. Stat. 5738–50, and promulgated the religious services provision in 1985, *see* 27 Cal. Regulatory Notice Reg. 3100 (July 6, 1985). The challenged provision has therefore been on the books for over 40 years.

Yet Foothills has not identified a single instance in all those decades in which the provision has been used to enjoin a facility's mandatory religious curriculum. And far from communicating a specific warning or threat of enforcement, the State has explicitly disavowed enforcement of the provision under these circumstances. *See Lopez v. Candaele*, 630 F.3d 775, 788 (9th Cir. 2010) ("Likewise, we have held that plaintiffs did not demonstrate the necessary injury in fact where the enforcing authority expressly interpreted the challenged law as not applying to the plaintiffs' activities."); *Johnson v. Stuart*, 702 F.2d 193, 195 (9th Cir. 1983) (finding no standing to challenge a statute when the state's attorney general "disavowed any interpretation of [the statute] that would make it applicable in any way to" the plaintiffs).

Because there is no credible threat that Foothills will be prosecuted for engaging in its intended conduct under the religious services provision, Foothills lacks standing to challenge it. There is thus no case or controversy for us to decide. *See* U.S. Const. art. III, § 2, cl. 1; *see also Coal. for a Healthy Cal. v. F.C.C.*, 87 F.3d 383, 384 (9th Cir. 1996) ("We dismiss the Coalition's petition because it does not arise from a cognizable dispute and thus seeks relief that we are not empowered to render: an advisory opinion.").[4]

## II.

Foothills also attacks the Act's general requirement that it obtain a license in order to run a child day care facility, under the Free Exercise and Establishment clauses. We

---

[4] The district court, although finding that Foothills lacked standing to challenge the religious services provision, dismissed this claim with prejudice. Because a "dismissal for lack of subject matter jurisdiction is without prejudice," *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017), the judgment should be amended accordingly on remand.

conclude that it has standing to raise these claims, but that each fails on the merits.

## A.

Foothills alleges the licensure requirement violates the Free Exercise Clause because the Act "treats fifteen comparable secular child day care operations more favorably" than religious institutions by exempting them from the licensure requirement, and so "is not a generally applicable law." *See Kumar v. Koester*, 131 F.4th 746, 753 (9th Cir. 2025). The district court dismissed this claim for lack of standing.

We disagree as to standing. Foothills has alleged a religious "commitment to minister to children" and views operating a child day care facility "as an extension of" its "current ministry to its children." Foothills thus intends to engage in constitutionally protected activity. *See Kumar*, 131 F.4th at 754 ("[P]racticing . . . religion is a constitutionally protected activity."). And Foothills claims that its religious beliefs are in conflict with the licensure requirement because, as a matter of faith, it "does not believe that the State can override the decisions of fit parents." Foothills' proposed conduct—operating without a license— is proscribed by statute. *See* Cal. Health & Safety Code § 1596.80; *Tingley*, 47 F.4th at 1067. Finally, it is likely that California will enforce the general licensure requirement as it is the linchpin of the Act; indeed, California has already once revoked Foothills' license for failure to comply with the Act and implementing regulations.

This claim, however, fails on the merits. The Free Exercise Clause generally "does not relieve an individual of the obligation to comply with a valid and neutral law." *Tingley*, 47 F.4th at 1084 (cleaned up). Rather, it "prohibits

government entities from burdening a plaintiff's sincere religious practice pursuant to a policy that is not neutral or generally applicable." *Kumar*, 131 F.4th at 753 (cleaned up). A state "fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Fulton v. City of Phila.*, 593 U.S. 522, 533 (2021). "A law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." *Id.* (cleaned up).

Foothills contends that the Act's exemption of "recreation programs conducted for children by" the YMCA "or similar organizations," Cal. Health & Safety Code § 1596.793, "provides a mechanism for individualized exceptions to licensure." But this provision only exempts *recreation* programs from the licensure requirement; it explicitly does not exempt "child day care programs conducted by" the same organizations and so creates no mechanism for granting individualized exemptions for such facilities. *Id.* And to the extent the Act does allow for some minimal discretion in determining whether an organization operates a recreation program, it is a far cry from the "unfettered discretion that could lead to religious discrimination." *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1081-82 (9th Cir. 2015).

"A law also lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton*, 593 U.S. at 534. Foothills contends that because the "Act provides more than a dozen licensure exemptions," it is underinclusive and so not generally applicable. *See* Cal. Health & Safety Code § 1596.792 (listing exemptions). But these exemptions only matter if

they are "comparable" to regulated religious conduct. *Tandon v. Newsom*, 593 U.S. 61, 62 (2021) (per curiam). Comparability is "judged against the asserted government interest that justifies the regulation at issue." *Id.*

California's asserted interest is "in protecting the health and safety of children." It adopted the licensing statute because "child daycare facilities can contribute positively to a child's emotional, cognitive, and educational development," Cal. Health & Safety Code § 1596.72(a), and a licensing regime would "ensure a quality childcare environment," *id.* § 1596.72(b). No provision of the Act exempts entities "comparable," in this sense, to child day care facilities. Foothills points to the exception for any "child daycare program that operates only one day per week for no more than four hours on that one day." *Id.* § 1596.792(j). This exemption applies to, among other things, Sunday schools. But a program that oversees children for only four hours a week does not present a threat to children's health and safety comparable to that of a facility that can operate up to 24 hours a day. *See id.* § 1596.750 (defining a "[c]hild day care facility" as a facility that provides care "on less than a 24-hour basis").

Foothills also contends that the exemptions for "public recreation program[s]," [5] programs "administered by the Department of Corrections and Rehabilitation," and programs "operated by a local educational agency under contract with the State Department of Education and that operates in a school building," are comparable to a child day

---

[5] A "public recreation program" is "a program operated by the state, city, county, special district, school district, community college district, chartered city, or chartered city and county" that meets certain requirements. Cal. Health & Safety Code § 1596.792(g).

care facility. Cal. Health & Safety Code § 1596.792(g), (m), (o). But because the State already exerts substantial control over these facilities, which are operated by a public entity or connected to a public entity and covered by separate regulatory schemes, the risk to children's health and safety is diminished compared to a private facility over which the State, without the licensing requirement, would have little control.

Because the licensure requirement is neutral and generally applicable, rational basis review applies. *Tingley*, 47 F.4th at 1084. The requirement easily satisfies that forgiving standard. As Foothills concedes, "the State has a generalized compelling interest in the welfare of children." Indeed, the State has a "vital governmental interest in the protection of children." *Rush v. Obledo*, 756 F.2d 713, 714 (9th Cir. 1985). And the licensing requirement is rationally related to this interest. *See Merrifield v. Lockyer*, 547 F.3d 978, 988 (9th Cir. 2008).[6]

## B.

Foothills alleges that the Act's exemption of certain sectarian organizations—such as the YMCA and Boy Scouts of America—from licensing gives preferential treatment to

---

[6] Foothills also argues that DSS's authority to remove a preschool director violates the ministerial exception doctrine. But the ministerial exception applies only to "employment disputes"; it "does not mean that religious institutions enjoy a general immunity from secular laws." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 746 (2020); *see Markel v. Union of Orthodox Jewish Congregations of Am.*, 124 F.4th 796, 803 (9th Cir. 2024) ("The ministerial exception encompasses all adverse personnel or tangible employment actions between religious institutions and their employees . . . ."). Where, as here, a State imposes a sanction for the violation of a valid secular law that is unrelated to employment, the ministerial exception does not apply.

certain religions in violation of the Establishment Clause. "The clearest command of the Establishment Clause is that the government may not officially prefer one religious denomination over another." *Cath. Charities Bureau, Inc. v. Wisc. Labor & Indus. Rev. Comm'n*, 605 U.S. 238, 247 (2025) (cleaned up); *see also Kumar*, 131 F.4th at 754. Government action that expresses hostility towards a plaintiff's religion, coupled with a sufficient connection between the plaintiff and that action, inflicts an injury that can satisfy Article III, so Foothills has standing to raise this claim. *See Kumar*, 131 F.4th at 755; *see also Cath. League for Religious & C.R. v. City & Cnty. of S.F.*, 624 F.3d 1043, 1052 (9th Cir. 2010) (en banc).

The claim, however, fails on the merits. As we have explained, the provision in question—Cal. Health & Safety Code § 1596.793—provides that the licensing requirement and attendant regulations "do not apply to recreation programs conducted for children" by various organizations, but that "child day care programs conducted by these organizations" are subject to the Act. It also contains a non-exclusive list of organizations that typically operate recreation programs, including the ostensibly sectarian YMCA and Boy Scouts. *Id.* Contrary to Foothills' allegations, this exception "establishes" no "denominational preference." *Cath. Charities Bureau, Inc.*, 605 U.S. at 248. Instead, it exempts a certain type of *programming* from the licensure requirement. If Foothills sought to operate a recreation program, it would not be subject to the Act. And if the YMCA or the Boy Scouts sought to operate a child day care facility, they would. This exemption draws no lines based on religion. *See Kumar*, 131 F.4th at 754.

## III.

Foothills contends that the religious services provision violates the Free Speech Clause because it requires Foothills to inform parents that a child is "[t]o be free to attend religious services or activities of his/her choice" through a form given to the parent and signage posted "in a prominent, publicly accessible area." Cal. Code Regs. tit. 22, § 101223. Foothills does not want to communicate this message.

The State contends that Foothills' intended conduct is not "affected with a constitutional interest," *Libertarian Party*, 709 F.3d at 870, "because basic requirements that the public be made aware of duly enacted laws and regulations—such as this one—do not implicate the First Amendment." *See S.F. Apartment Ass'n v. City & Cnty. of S.F.*, 881 F.3d 1169, 1177-78 (9th Cir. 2018). But the required posting of government-drafted notices *can* raise First Amendment issues. *See Nat'l Inst. of Fam. & Life Advocs. v. Becerra* ("*NIFLA*"), 585 U.S. 755, 766 (2018). Refusing to provide this notice is proscribed by regulation. *See* Cal. Code Regs. tit. 22, § 101223(b). Although Foothills has not identified a history of past prosecution or enforcement, this "factor alone is not dispositive." *Libertarian Party*, 709 F.3d at 872. And while the State emphasizes that Foothills has not alleged "that enforcement authorities have communicated any specific warning or threat of enforcement," it does not disavow enforcement of the provision. Foothills therefore has standing to bring this claim.

This claim, however, fails on the merits. Foothills contends that requiring it to inform parents of their rights and those of their children impermissibly compels speech. Two levels of constitutional scrutiny potentially apply to claims

based on compelled commercial speech. *See Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1275 (9th Cir. 2023). Typically, we apply "intermediate scrutiny, which requires the government to 'directly advance' a 'substantial' governmental interest, and the means chosen must not be 'more extensive than necessary.'" *Id.* (quoting *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 564, 566 (1980)). When the compelled speech requires only the disclosure of "purely factual and uncontroversial information," however, the "lower standard applied in *Zauderer*, which requires the compelled speech be 'reasonably related' to a substantial government interest and not be 'unjustified or unduly burdensome,'" applies. *Id.* (quoting *Zauderer v. Off. of Disciplinary Couns. of Sup. Ct. of Ohio*, 471 U.S. 626, 651 (1985)).

*Zauderer* scrutiny applies here. The compelled speech is purely factual—it is "literally true" that, under California law, children in day care facilities enjoy the panoply of rights described by the required form and posting. *CTIA – The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 846 (9th Cir. 2019). And although the parents of children enrolled in Foothills' facility have agreed that their children will attend Foothills' religious services, they indisputably retain the right under both California law and their agreements with Foothills to withdraw their children from Foothills if they decide that their religious needs are better met elsewhere.

While the disclosure's topic is relevant to determining whether the disclosure is controversial, *see NIFLA*, 585 U.S. at 769 (concluding that compelled speech "about *state*-sponsored services—including abortion," was controversial because abortion is "anything but an uncontroversial topic" (cleaned up)), a purely factual statement does not become controversial simply because it "can be tied in some way to

a controversial issue," *CTIA*, 928 F.3d at 845. Rather, a compelled statement is controversial when it takes "sides in a heated political controversy," and forces the speaker "to convey a message fundamentally at odds with its mission." *Id.*

Foothills, citing *NIFLA*, contends that the disclosure is controversial because the right to religious autonomy is at odds with its stated mission. But the law at issue in *NIFLA* did not merely require the disclosure of statutory rights. As the Second Circuit has noted, requiring "a notice informing employees of their available rights and remedies under a valid statute is not akin to requiring a crisis pregnancy center to distribute a notice about state-sponsored reproductive health services at the same time the centers try to dissuade women from choosing that option." *CompassCare v. Hochul*, 125 F.4th 49, 66 (2d Cir. 2025) (cleaned up).[7] While "the policy judgment that motivated the Act may be controversial," the mere "existence and contents of the Act" is "not itself controversial." *Id.* at 65 (cleaned up). Because the Act merely requires Foothills to inform parents of their children's rights and does not "convey a message fundamentally at odds with its mission," the required disclosure is not controversial. *CTIA*, 928 F.3d at 845.

The notice requirement "is reasonably related to" the State's "substantial governmental interest," *id.*, in protecting children in day care facilities, *see Rush*, 756 F.2d at 720. And it is not unjustified or unduly burdensome. It is "satisfied by a single 8.5 x 11" posted notice" and handout. *CTIA*, 928

---

[7] The challenged statute in that case required employers to inform employees of their rights to be free from "discrimination based on an employee's or a dependent's reproductive health decision making." *CompassCare*, 125 F.4th at 54 (cleaned up).

F.3d at 849. Such a "minimal requirement does not interfere with," nor "threaten to drown out," Foothills' other speech. *Id.*

## IV.

Foothills alleges that the Act violates the Due Process Clause by imposing unconstitutional conditions "as a precondition and continual condition for licensure." "A plaintiff suffers a constitutionally cognizable injury whenever the government succeeds in pressuring the plaintiff into forfeiting a constitutional right in exchange for a benefit or the government withholds a benefit based on the plaintiff's refusal to surrender a constitutional right." *Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128, 1137 (9th Cir. 2024) (cleaned up). Because Foothills alleges it faces "the forced choice" of either retaining its constitutional rights or obtaining a license to operate a child day care facility, it has Article III standing to raise this claim. *Id.* at 1138; *see also Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606-07 (2013).

"Under the well-settled doctrine of unconstitutional conditions, the government may not require a person to give up a constitutional right in exchange for a discretionary benefit." *Stavrianoudakis*, 108 F.4th at 1136 (cleaned up). The doctrine applies to state licensing schemes. *See generally, e.g.*, *Frost v. R.R. Comm'n of State of Cal.*, 271 U.S. 583 (1926). Foothills asserts that to receive a license to operate a child day care facility, it must waive the (1) Fourth Amendment's protection against unreasonable searches,[8]

---

[8] *See* Cal. Health & Safety Code § 1597.09(a) ("Each licensed child day care center shall be subject to unannounced inspections by the department.").

(2) Fifth Amendment right against self-incrimination,[9] (3) Sixth Amendment right to confront one's accuser,[10] (4) Seventh Amendment right to a jury trial,[11] and (5) First Amendment's protection of free speech.[12] To state a claim, Foothills must plausibly allege that the conditions imposed are unconstitutional. *See Hotop v. City of San Jose*, 982 F.3d 710, 718 (9th Cir. 2020) (per curiam). It has not done so.

"[A] statute authorizing warrantless searches which applies only to a single pervasively regulated industry, where urgent governmental interests are furthered by such regulatory inspections, does not violate the Fourth Amendment." *Rush*, 756 F.2d at 719. We have previously upheld the warrantless searches the Act authorized of family day care centers[13] so long as they are limited to reasonable times and places. *Id.* at 720-22. The same result obtains here because child day care facilities are also "pervasively

---

[9] *See* Cal. Code Regs. tit. 22, § 101200(b) ("The Department has the authority to interview children or staff without prior consent.").

[10] *See* Cal. Health & Safety Code § 1596.853(b) ("Unless the complainant specifically requests otherwise," no "record published, released, or otherwise made available to the licensee shall disclose the name of any person mentioned in the complaint.").

[11] *See* Cal. Gov. Code § 11517(a) ("A contested case [involving the revocation or suspension of a license] may be originally heard by the agency itself" or by "an administrative law judge.").

[12] *See* Cal. Code Regs. tit. 22, § 101223(a)(5) (religious services provision). There is no unconstitutional condition based on the Free Speech Clause. *See supra* Part III.

[13] A "family daycare home" is "a facility that regularly provides care, protection, and supervision for 14 or fewer children, in the provider's own home, for periods of less than 24 hours per day, while the parents or guardians are away." Cal. Health & Safety Code § 1596.78(a).

regulated" and the same "urgent governmental interest" is "furthered by warrantless inspections." *Id.* at 722.

Because "corporations and other collective entities" like Foothills "do not enjoy the privilege" against self-incrimination, *In re Twelve Grand Jury Subpoenas*, 908 F.3d 525, 528 (9th Cir. 2018) (per curiam) (cleaned up), the act does not violate the Fifth Amendment. The Sixth Amendment's "Confrontation Clause does not come into play until the initiation of criminal proceedings." *S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 742 (1984). And while the regulations allow for the assessment of civil penalties, *see* Cal. Code Reg. tit. 22 § 101195(a), the complaint only conclusorily states that Foothills "must waive" its "Seventh Amendment rights to a trial by jury," and Foothills makes no argument before this court that it has been denied such a right, *see Alvarez v. Chevron Corp.*, 656 F.3d 925, 930 (9th Cir. 2011) (when deciding a 12(b)(6) motion, courts "disregard threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" (cleaned up)).[14]

## V.

The judgment of the district court is **AFFIRMED,** and the case is **REMANDED** with instructions to amend the judgment to provide for dismissal of Foothills' Free Exercise

---

[14] Foothills' original complaint alleged a violation of the Privileges or Immunities Clause. The district court dismissed that claim without prejudice, and it was not renewed in the operative complaint. The claim fails because Foothills does not allege interference with its right to interstate travel. *See Merrifield*, 547 F.3d at 984. Any challenge to California's prior mask mandates is moot. *See Brach v. Newsom*, 38 F.4th 6, 9 (9th Cir. 2022) (en banc).

Clause challenge to the religious services provision without prejudice. Costs shall be taxed in favor of the appellees.